RIGGS, SPECIAL GUARDIAN, *v.* DEL DRAGO ET AL.

No. 30. Argued October 20, 1942.—Decided November 9, 1942.

*Mr. John W. Davis,* with whom *Mr. Otis T. Bradley* was on the brief, for petitioner.

*Mr. Henry Cohen,* with whom *Mr. Ludwig M. Wilson* was on the brief, for Giovanni del Drago et al.; *Mr. Anthony J. Caputo* submitted for Byron Clark, Jr., Executor; and *Mr. Harold W. Hastings* submitted for Harold W. Hastings, Special Guardian,—respondents.

Briefs of *amici curiae* were filed by *Solicitor General Fahy, Assistant Attorney General Clark,* and *Messrs. Sewall Key, Arnold Raum,* and *Valentine Brookes* on behalf of the United States; by *Messrs. John J. Bennett, Jr.,* Attorney General of the State of New York, and *Henry Epstein,* Solicitor General, on behalf of that State (with the States of Florida, Vermont, Georgia, Arkansas, New Mexico, and Michigan, by their respective Attorneys General, joining in the brief); by *Messrs. Harrison Tweed* and *Weston Vernon, Jr.;* and by *Mr. George Gray Zabriskie* on behalf of Arnold Wood, Jr.,—all in support of petitioner.

*Mr. Bethuel M. Webster* filed a brief on behalf of Mary Ann Blumenthal, as *amicus curiae,* urging affirmance.

Mr. Justice Murphy delivered the opinion of the Court.

The question for decision is whether § 124 of the New York Decedent Estate Law,[1] which provides in effect that, except as otherwise directed by the decedent's will, the burden of any federal death taxes paid by the executor or administrator shall be spread proportionately among the distributees or beneficiaries of the estate, is unconstitutional because in conflict with the federal estate tax law, Internal Revenue Code, § 800 *et seq.*

---

[1] Chapter 709, Laws of 1930.

Testatrix, a resident of New York, died on October 8, 1937, leaving a will dated March 27, 1934, which, after certain gifts of personal effects and small sums of cash, bequeathed $300,000 outright to respondent Giovanni del Drago, and created a trust of $200,000 for the benefit of respondent Marcel del Drago during his life, with remainder over upon his death. The residue of testatrix's estate was left in trust for the benefit of Giovanni during his life, with remainder over upon his death. The will contained no reference to the payment of estate or inheritance taxes.

The executors paid approximately $230,000 on account of the federal estate tax, and then asked the Surrogate, in a petition for the settlement of their account, to determine whether that payment should be equitably apportioned among all the persons beneficially interested in the estate, pursuant to § 124 of the Decedent Estate Law. Giovanni and Marcel del Drago answered, raising objections to the constitutionality of § 124. Petitioner, who was appointed special guardian to represent the interests of the infant remaindermen under the residuary trust, urged that the tax be apportioned. The Surrogate overruled the constitutional objections, and directed apportionment.[2] The New York Court of Appeals, by a divided court, reversed, holding § 124 repugnant to the federal estate tax law—particularly to § 826 (b) of the Internal Revenue Code—and in violation of the supremacy (Art. VI, cl. 2) and the uniformity (Art. I, § 8, cl. 1) clauses of the Constitution.[3] The importance of the question moved us to grant certiorari.

We are of opinion that Congress intended that the federal estate tax should be paid out of the estate as a whole,

---

[2] 175 Misc. (N. Y.) 489, 23 N. Y. S. 2d 943.

[3] 287 N. Y. 61, 38 N. E. 2d 131.

and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax; accordingly, § 124 is not in conflict with the federal estate tax law. This conclusion is based upon the provisions of the Revenue Act of 1916, 39 Stat. 756, and subsequent acts, their legislative history and their administrative interpretation.

In the Act of 1916 Congress turned from the previous century's inheritance tax upon the receipt of property by survivors (see *Knowlton* v. *Moore,* 178 U. S. 41; *Scholey* v. *Rew,* 23 Wall. 331) to an estate tax upon the transmission of a statutory "net estate" by a decedent. That act directed payment by the executor in the first instance, § 207, but provided also for payment in the event that he failed to pay, § 208. It did not undertake in any manner to specify who was to bear the burden of the tax. Its legislative history indicates clearly that Congress did not contemplate that the Government would be interested in the distribution of the estate after the tax was paid, and that Congress intended that state law should determine the ultimate thrust of the tax.[4] That Congress, from

---

[4] Congressman Cordell Hull, one of the supporters of the 1916 Act and its reputed draftsman, declared: "Under the general laws of descent the proposed estate tax would be first taken out of the net estate before distribution, and distribution made under the same rule that would otherwise govern it. Where the decedent makes a will he can allow the estate tax to fasten on his net estate in the same manner, or if he objects to this equitable method of imposing it upon the entire net estate before distribution he can insert a residuary clause or other provision in his will, the effect of which would more or less change the incidence of the tax." 53 Cong. Rec. 10657.

Congressman Kitchin, Chairman of the House Ways and Means Committee, stated: "We levy an entirely different system of inheritance taxes. We levy the tax on the transfer of the flat or whole net estate. We do not follow the beneficiaries and see how much this one gets and that one gets, and what rate should be levied on lineal

1916 onward, has understood local law as governing the distribution of the estate after payment of the tax (with the limited exceptions created by § 826 (c) and (d) of the Internal Revenue Code, to be discussed presently) is confirmed by § 812 (d) of the Code, dealing with charitable deductions, which recognizes that estate taxes may be payable in whole or in part out of certain bequests, etc., "by the law of the jurisdiction under which the estate is administered." [5] The administrative interpretation has been in accord,[6] and that has been the understanding of the federal courts,[7] and of some state courts.[8]

---

and what on collateral relations, but we simply levy on the net estate. This also prevents the Federal Government, through the Treasury Department, going into the courts contesting and construing wills and statutes of distribution." 53 Cong. Rec. app. p. 1942.

[5] Section 812 (d) was first enacted as § 303 (a) of the 1924 Act, 43 Stat. 253. It was repealed by § 323 (a) of the 1926 Act, 44 Stat. 9, and reënacted by § 807 of the 1932 Act, 47 Stat. 169. The committee reports accompanying the 1932 Act recognize that local law determines the ultimate incidence of the federal estate tax. H. Rep. No. 708, 72d Cong., 1st Sess., p. 49; S. Rep. No. 665, 72d Cong., 1st Sess., p. 52. See also Article 44 of Regulations 68 and Regulations 80; § 81.84 of Regulations 105.

[6] The Treasury has taken the position, at least since 1922, that it has no interest in the distribution of the burden of the estate tax. See Article 85 of Regulations 63; Article 87 of Regulations 68, Regulations 70 (1926 and 1929 eds.), and Regulations 80 (1934 and 1937 eds.); and § 81.84 of Regulations 105.

[7] *Edwards* v. *Slocum,* 287 F. 651, 653, affirmed, 264 U. S. 61, 63; *Y. M. C. A.* v. *Davis,* 264 U. S. 47, 51; *New York Trust Co.* v. *Eisner,* 256 U. S. 345, 349; *Hepburn* v. *Winthrop,* 65 App. D. C. 309, 83 F. 2d 566, 572.

[8] *Amoskeag Trust Co.* v. *Trustees of Dartmouth College,* 89 N. H. 471, 200 A. 786; *Thompson* v. *Union Mercantile Trust Co.,* 164 Ark. 411, 262 S. W. 324; *Henderson* v. *Usher,* 125 Fla. 709, 170 So. 846. And see *In re Newton's Estate,* 74 Pa. Super. Ct. 361; *Plunkett* v. *Old Colony Trust Co.,* 233 Mass. 471, 124 N. E. 265; *Corbin* v. *Townshend,* 92 Conn. 501, 103 A. 647; *Gaede* v. *Carroll,* 114 N. J. Eq. 524, 169 A. 172.

In reaching a contrary result, the court below relied primarily upon § 826 (b).[9] But that section does not direct how the estate is to be distributed, nor does it determine who shall bear the ultimate burden of the tax. As pointed out before, while the federal statute normally contemplates payment of the tax before the estate is distributed, § 822 (b) of the Code, provision is made for collection of the tax if distribution should precede payment, § 826 (a). If any distributee is thus called upon to pay the tax, § 826 (b) provides that such person "shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate." By that section Congress intended to protect a distributee against bearing a greater burden of the tax than he would have sustained had the

---

But compare *Matter of Hamlin*, 226 N. Y. 407, 124 N. E. 4; *Farmers' Loan & Trust Co.* v. *Winthrop*, 238 N. Y. 488, 144 N. E. 769; *Matter of Oakes*, 248 N. Y. 280, 162 N. E. 79; *Bemis* v. *Converse*, 246 Mass. 131, 140 N. E. 686.

[9] This section was originally enacted as part of § 208 of the Act of 1916. Its full text is as follows:

SEC. 826. COLLECTION OF UNPAID TAX.

.        .        .        .        .

(b) *Reimbursement out of estate.* If the tax or any part thereof is paid by, or collected out of that part of the estate passing to or in the possession of, any person other than the executor in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate, it being the purpose and intent of this subchapter that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution.

tax been carved out of the estate prior to distribution; any doubt that this is the proper construction is removed by the concluding clause of the section, specifically stating that it is "the purpose and intent of this subchapter that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution." Section 826 (b) does not command that the tax is a non-transferable charge on the residuary estate; to read the phrase "the tax shall be paid out of the estate" as meaning "the tax shall be paid out of the residuary estate" is to distort the plain language of the section and to create an obvious fallacy. For in some estates there may be no residue, or else one too small to satisfy the tax; resort must then be had to state law to determine whether personalty or realty, or general, demonstrative or special legacies abate first. In short, § 826 (b), especially when cast in the background of Congressional intent, discussed before, simply provides that, if the tax must be collected after distribution, the final impact of the tax shall be the same as though it had first been taken out of the estate before distribution, thus leaving to state law the determination of where that final impact shall be.

Respondents also rely on § 826 (c),[10] authorizing the executor to collect the proportionate share of the tax from the beneficiary of life insurance includable in the gross estate by reason of § 811 (g), and § 826 (d),[11] authorizing similar action against a person receiving property subject to a power which is taxable under § 811 (f), as forbidding further apportionment by force of state law against other

[10] This section was first adopted in § 408 of the 1918 Act, 40 Stat. 1057. See H. Rep. No. 767, 65th Cong., 2d Sess.

[11] This section was added by § 403 (c) of the Revenue Act of 1942, approved October 21, 1942. See H. Rep. No. 2333, 77th Cong., 2d Sess., p. 161.

distributees.[12] But these sections deal with property which does not pass through the executor's hands, and the Congressional direction with regard to such property is wholly compatible with the intent to leave the determination of the burden of the estate tax to state law as to properties actually handled as part of the estate by the executor.

Since § 124 of the New York Decedent Estate Law is not in conflict with the federal estate tax statute, it does not contravene the supremacy clause of the Constitution. Nor does the fact that the ultimate incidence of the federal estate tax is governed by state law violate the requirement of geographical uniformity. Cf. *Phillips* v. *Commissioner,* 283 U. S. 589, 602.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

---

[12] This argument was accepted in *Bemis* v. *Converse,* 246 Mass. 131, 140 N. E. 686, and *Farmers' Loan & Trust Co.* v. *Winthrop,* 238 N. Y. 488, 144 N. E. 769.