Taft, J.,
dissenting. I regret that I cannot agree with the conclusion reached by the majority in this case. It is unfortunate that the conclusion reached by the Probate Court and the Court of Appeals would require a payment of $50,000 more on account of federal estate tax than does the conclusion reached by the majority. On the other hand, it should be observed that, using the figures set forth in the widow’s brief, the latter conclusion will result in the children of the testator, the wife of one of those children and the decendents of those children receiving from the testator about $99,000 less than they would receive if the widow received only one-third of what was left in the estate after payment of federal estate tax.*
The rights of the widow are admittedly dependent upon the provisions of Section 10504-55, General Code, providing that she may “elect whether to take under the will or under the statute of descent and distribution” and on the provisions of the statutes of descent and distribution. The applicable portion of the latter *497 statutes is Section 10503-4, General Code, which provides so far as material:
“When a person dies intestate having title or right to any personal property, or to any real .estate or inheritance in this state, such personal property shall be distributed, and such real estate or inheritance shall descend and pass in parcenary, except as otherwise provided by law, in the following course:
i i * # #
“3. If there be a spouse and more than one child, or their lineal descendants, surviving, one-third to the surviving spouse and the remainder to the children equally, or to the lineal descendants of any deceased child, per stirpes.” (Italics supplied.)
By directing administrators and executors to pay debts and by forbidding distribution until debts are paid, the General Assembly has clearly limited and fixed what may be distributed, whether the distributees take under a will, or are entitled by law to take as widow and children of an intestate or as a widow who has elected against the will.
Both parties agree that the statutes of this state require an executor or an administrator to pay the federal estate tax out of the assets of the estate or make provision for its payment before distribution of those assets can be made. See Sections 10509-121, 10509-181, 10509-182, General Code, and Tax Commission, ex rel. Price, Atty. Genl., v. Lamprecht, Admr., 107 Ohio St., 535, 140 N. E., 333, 31 A. L. R., 985; Davidson v. Miners & Mechanics Savings & Trust Co., Exr., 129 Ohio St., 418, 430, 195 N. E., 845, 98 A. L. R., 1318.
When the General Assembly directed that an estate “shall be distributed” in thirds to a widow and two children it was obviously directing a division of the assets which were available for distribution, — that is, the balance of assets remaining after the personal rep *498 resentative had satisfied the requirements of the statutes, including the requirement that the estate tax be paid.
The conclusion reached by the majority results in the widow receiving $198,000 more as her one-third share than will be received by those entitled to either of the other one-third shares of the assets then available for distribution.* To thus give her more than a one-third share of the remaining assets re *499 quires the executors not to divide in three equal parts assets which are available for distribution but to give much more than a third of such assets to the widow at the expense of those entitled under the statute to the other two-thirds.
In effect, this conclusion of the majority amends the statutes of descent and distribution by enabling the widow to receive not merely the one-third of the distributable assets which the General Assembly has stated that she shall receive but a portion substantially greater than that one-third. There is certainly no enactment of the General Assembly which authorizes such a distribution.
Almost every argument that can be made in support of such a conclusion necessarily is based upon a contention that Congress intended such a result. The most obvious answer to any such contention is that the General Assembly of Ohio and not the Congress of the United States determines the extent of the share of a widow or widower in the assets of the estate of one who dies a resident of Ohio. See Riggs, Gdn., v. Del Drago, 317 U. S., 95, 87 L. Ed., 106, 63 S. Ct., 109. Furthermore, in enacting the subsection of the statute providing for the marital deduction (Section 812 [e], Title 26, U. S. Code), Congress disclaimed any intention that the marital deduction should not be burdened by the tax. Thus, in that subsection, in defining the marital deduction, it is stated :
“(E) Valuation of interest to surviving spouse. In determining for the purposes of subparagraph (A) the value of any interest in property passing to the surviving spouse for which a deduction is allowed by this subsection—
“ (i) there should be taken into account the effect which a tax imposed, by this chapter * * * has upon the net value to the surviving spouse of such interest * * (Italics supplied.)
*500 The words “a tax imposed by this chapter” refer to the tax imposed by the chapter on the estate tax.
The only authority cited in the majority opinion as “particularly in point” is Lincoln Bank & Trust Co. v. Huber (Ky. 1951), 240 S. W. (2d), 89. As the majority states, that decision was at least in part based upon the conclusion of the Kentucky court that Congress intended such a result. As the majority opinion further states, the Kentucky decision also follows the well established rule in Kentucky of equitable apportionment. That that rule, apart from statute, is peculiar to Kentucky appears from the note in 31 Boston University Law Review, 233, 234, cited in the majority opinion, where it is said:
‘ ‘ By the common law it was uniformly held that the residuary estate was to bear the brunt of all estate taxes and the executor was not entitled to reimbursement from the donee of an inter vivos transfer. On the other hand, those states which have adopted apportionment statutes prorate the federal estate tax amongst all the interested parties. Persons interested in the estate are defined as those persons who may be entitled to receive or who have received or who are the beneficiaries of property or of an interest which is required to be included in the taxable gross estate. Kentucky has arrived at the same result by court decision.”
It should be noted further that the statutory situation in Kentucky differs substantially from that in Ohio. In Kentucky, the statute gives the widow a share in the “husband’s surplus personalty” and the amount of “surplus personalty” is determined before deduction of the federal estate tax. Hampton’s Admrs. v. Hampton (Ky.), 221 S. W., 496, 10 A. L. R., 515, 518. However, as hereinbefore pointed out, the widow’s share under our statutes is a share in the amount available for distribution which, under our statutes, *501 cannot be determined until after payment of the federal estate tax.
It has been argued that to follow the decisions of the Probate Court and the Court of Appeals would prevent the achievement of at least substantial equality, so far as the federal estate tax is concerned, between those who reside in community-property states and those who do not. However, both parties concede that by will an Ohio testator can now secure all the advantages, so far as reduction in his federal estate tax is concerned, that he could have in a community-property state. On the other hand, he is not subject to the disadvantages which he would have in disposing of his property if he resided in a community-property state. One spouse may not desire the other to get as much of his or her property as he or she would be entitled to in a community-property state. A spouse residing in Ohio may satisfy this desire except to the extent that the Ohio statutes give an election to take against a will. If the decisions of the Probate Court and the Court of Appeals are followed, then a testator in this state will have been given an opportunity to get all the benefits, from the standpoint of reducing his estate tax, that he could have secured if he had resided in a community-property state. On the other hand, he will.not have been subject to the disadvantages of the laws relating to community property, to which he would be subjected if he resided in a community-property state.
Although the widow has endeavored to distinguish the decision of Young Men’s Christian Assn. v. Davis, 264 U. S., 47, 68 L. Ed., 558, 44 S. Ct., 291, affirming 106 Ohio St., 366, 140 N. E., 114, she concedes that it is “authority for the proposition that in the construction of a will, where the testator has failed to state where he wishes the burden of the estate tax to fall, it will be presumed that it was his intention that it fall upon *502 residuary rather than specific legacies and devisees. ’ ’ The Davis case clearly does hold this and it holds it for the reason that, where the testator has specifically provided for certain legatees and then left the balance of his estate to some other legatees, he has shown a preference for the specific legatees and thereby disclosed an intention in his will that they should not be required to bear the burden of the estate tax.
In the instant case, the testator certainly provided specifically in his will not only for his widow but for the others who were to take under his will. As to the principal portion of his property, his will divided his estate into four shares and gave his widow a life estate in only two of those shares. Under the will the other two shares and the remainder after his widow’s life estate "were to go to his children, the wife of one of his children and his children’s descendants. There is certainly nothing in the will which would justify an inference or a presumption that the testator intended that his widow was to bear no share of the estate tax burden. On the contrary, the will specifically indicates an intention that she was to get less than the one-third share of his net estate which the law gives her if she elects against the will. It would seem to follow that, even if Y. M. C. A. v. Davis, supra, is an authority only to the limited extent conceded by the widow, that decision would require an affirmance in the instant case.

See footnote page 498.

The net estate, before deducting the federal estate tax, was $2,086,537. The widow claims one-third of that amount or $695,512. In order to determine what each other third available for distribution would be if the widow’s contentions are followed, it is necessary to deduct from the $2,086,537 net estate before federal estate tax the $695,512 claimed by the widow and the federal estate tax of $396„000. This leaves a balance available for the other two-thirds shares of $995,025. In order to determine what each of the two other one-third shares would receive, that figure is divided by two. Thus, each of the two other one-third shares would amount to $497,512. Deducting that amount from the one-third share claimed by the widow of $695,512 discloses that the share to which the widow claims to be entitled would exceed each of the other one-third shares by $198,000.
If the Probate Court’s decision is followed, then the federal estate tax would be increased from $396,000 to $446,000. To determine the amount available for distribution, $446,000 would then be deducted from the net estate before federal taxes of $2,086,537. The result would be $1,640,537 available for distribution in thirds. Each one-third of that figure would be $546,845. That would be the widow’s one-third share and would be the amount of each of the other one-third shares. Since, if the widow’s contentions are followed, each of the other one-third shares would amount to only $497,512, that amount deducted from $546,845 shows that those entitled to each of the other one-third shares, other than the widow's one-third share, would get $49,333 less under the widow’s contentions than they would under the Probate Court’s decision. This would mean that the testator’s children, the wife of one of those children, and the descendants of those children would take under the widow’s contentions a total of $98,666 (twice $49,333) less than they would have received under the Probate Court’s decision.
Under the Probate Court’s decision, the widow’s one-third share would be the same in amount as the one-third share of each of the others. However, under the wfidow’s contentions her one-third share would exceed in amount each of the other one-third shares by $198,000. ' That amount would be almost 40 per cent of the $497,512 amount available for each of the other one-third shares. In other words, under her contentions, she would receive as her one-third share almost 40 per cent more than that received on account of each of the other one-third shares.