Walter P. BRENAN and Daniel A. LaMotte,
et al., Appellants,

v.

Daniel A. LaMOTTE et al., and Walter P.
Brenan, Appellees.

No. 14755.

Court of Civil Appeals of Texas.

San Antonio.

May 21, 1969.

decedent's death, interest paid on the delayed gift tax, deficiency federal estate taxes assessed against the estate by reason of the inclusion of the value of the 160-acre tract in decedent's estate and interest on such deficiency, inheritance taxes paid to the State of Texas and State of Kansas, certain ad valorem taxes paid, bond premiums, and attorney's fees and court costs paid in ancillary probate proceedings in Kansas. The trial court refused to apportion the federal estate taxes and state inheritance taxes between the testamentary assets and non-testamentary assets of the estate, said non-testamentary assets consisting of property given by decedent to defendants during their lifetime, in which a life estate was reserved by decedent. The trial court also awarded plaintiff the sum of $5,000.00 as attorney's fees for bringing and prosecuting this suit for recovery of compensation for legal services rendered by him.

Kampmann, Kampmann, Church & Burns, San Antonio, for appellant-appellee Brenan.

Matthews, Nowlin, Macfarlane & Barrett, W. F. Nowlin, Luther H. Soules III, San Antonio, for appellants-appellees La Motte.

KLINGEMAN, Justice.

This is an appeal by all parties from a declaratory judgment arising out of an attorney's fees contract between Walter P. Brenan, Esq., hereinafter called plaintiff, and Daniel A. LaMotte and wife, Rose Miller LaMotte, hereinafter called defendants. The trial court held that under the terms of such contract plaintiff was entitled to be paid an amount equal to one-third of the net value of the testamentary assets on hand in the estate of Sophia E. Miller Ogg, deceased. The trial court further determined what charges and expenses were allowable in determining the net value of the estate, which included federal estate taxes paid, gift taxes paid on a 1958 gift of 160 acres of land in Johnson County, Kansas, which gift tax was paid after

Defendant Rose Miller LaMotte is a sister of Sophia E. Miller Ogg. During the year 1958, Mrs. Ogg by deed of gift conveyed two tracts of land situated in Kansas to Rose Miller LaMotte and Daniel A. LaMotte, in which deed Mrs. Ogg reserved to herself the right of possession, rents and profits during her lifetime. A gift tax return was filed by Mrs. Ogg covering one of the tracts conveyed by the 1958 deed, and at that time a gift tax of $6,337.50 was paid, but no gift tax return was made at that time on the 160-acre tract. Under date of May 19, 1958, Mrs. Ogg made a will in which she left all of her property to her sister, Rose Miller LaMotte, and named Mrs. LaMotte independent executrix of said will. Mrs. Ogg died on August 4, 1965, in Bexar County, Texas, and on August 9, 1965, an application to probate such will was filed in Cause No. 118,774, in the County Court of Bexar County, Texas, with plaintiff as attorney for the applicant, Rose Miller LaMotte. Thereafter, on August 17, 1965, an application was filed by Pete Tijerina, Esq., to probate another instrument, dated April 3, 1965, purporting to be the last will of Mrs. Ogg, in

Cause No. 118,826, in the Probate Court of Bexar County, Texas, in which all of Mrs. Ogg's property was devised to Thomas Castillo, an associate of the Arthur Murray Dance Studio, who was unrelated to the decedent, and in which said will Mr. Tijerina was named independent executor. After the filing of the application by Mr. Tijerina to probate the 1965 will, plaintiff advised defendants of that matter and the contract of employment involved herein was executed. Such contract is dated August 24, 1965, and recites that two wills of Mrs. Ogg had been filed for probate, one of which left everything to Rose Miller LaMotte and the other left everything to Thomas Castillo; that defendants felt that the will to Thomas Castillo was fraudulent, and employed plaintiff to contest said will and to represent them in any suit he may file in their behalf, and to prosecute their claim to the estate of Mrs. Ogg. As compensation therefor, said contract provides:

"For and in consideration of the services rendered and to be rendered by our said attorney, we do hereby agree and obligate ourselves to give and allow him *as compensation one-third (⅓) of whatever may be realized by us out of said estate if a settlement is reached without trial, and one-half (½) if a trial is had or suit is filed.* (Emphasis supplied.)

Immediately after the execution of said contract, plaintiff filed a contest to the application to probate the will of April 3, 1965 (Castillo will), and thereafter, on July 19, 1967, a hearing was had on the application to probate said April 3d will and contest filed therein, and after such hearing the County Court entered its judgment admitting said will of April 3, 1965, to probate. Thereafter plaintiff filed an appeal to the District Court of Bexar County, Texas, under the provisions of the Texas Probate Code and Texas Rules of Civil Procedure. This case was designated No. F–182,866 in the District Court of Bexar County, Texas, Thereafter a series of negotiations was carried on and a settlement agreement was entered into which provided

that Thomas Castillo was to receive the sum of $50,000.00, and that final judgment be entered denying the admission to probate of the will of April 3, 1965, and in pursuance thereto a judgment was entered in said cause to that effect. The will of May 19, 1958, in favor of Mrs. LaMotte was thereafter admitted to probate in the Probate Court of Bexar County, Texas. Defendants paid $40,000.00 and plaintiff, $10,000.00 of the sum of $50,000.00 paid to Thomas Castillo. Plaintiff testified that during the settlement negotiations, he and the defendants discussed the matter of the percentage interest he was entitled to at that time, that he stated his fee at such time was one-half, and that there wasn't any question raised by defendants about it being a fifty-fifty contract; that this was one of the reasons he was willing to put up $10,000.00 to pay Castillo in connection with the settlement agreement. There is no testimony of defendants directly contradicting such testimony.

Plaintiff, by Point of Error No. 1, complains of the trial court's holding that under the attorney's fee contract between plaintiff and defendants, plaintiff was only entitled to have and receive as his fees an amount equal to one-third of the net value of the testamentary assets on hand in the estate of Sophia E. Miller Ogg.

It is our opinion that the court erred in holding that the percentage interest to which plaintiff was entitled under such contract was a one-third rather than a one-half interest. Under the unequivocal terms of the contract, plaintiff was entitled to a one-half interest, *if a trial is had or suit is filed.* It is plaintiff's contention that both a trial was had and a suit filed, but in any event we hold that a trial was had under the terms and provisions of the contract. Immediately after the execution of the contract, a contest to the application to probate the Castillo will was filed by plaintiff, by which plaintiff contended that probate of the Castillo will should be denied because, (a) if the signature on said instrument was that of decedent, it was ob-

tained by fraudulent representation that such instrument was not a will; (b) said will was the result of undue influence; (c) the decedent did not possess testamentary capacity at the time of the signing of such instrument.

A hearing was thereafter held on such application and contest thereto. Plaintiff acknowledges that he did not present all of the evidence or testimony which he possibly might have, on this hearing in the probate court, and defendants concede that this is in keeping with the generally accepted strategy in this type of litigation, since on appeal there would be a trial de novo in the district court, and ordinarily neither party cares to show his full hand on such hearing in the probate court. In any event, the record contains the statement of facts of the hearing in the probate court in connection with such contest, which is in excess of fifty pages. On such hearing, the proponents of the Castillo will put on two witnesses, being the subscribing witnesses to the will. Both were vigorously cross-examined by counsel for contestants with regard to the formalities and solemnities of the execution of such will, the matter of testamentary capacity of the decedent and of undue influence. Thereafter, contestants offered the testimony of a medical doctor in support of their contention that the decedent did not possess testamentary capacity. The trial court, after hearing the testimony, admitted such will to probate, finding that the testatrix was of sound mind and had executed the will with the formalities and solemnities required by law. Contestants thereafter duly perfected their appeal to the District Court of Bexar County, and the parties reached a settlement before the trial de novo was had in that court.

■ "A trial, whether civil or criminal, is the examination before a competent tribunal, according to the law of the land, of the facts put in issue in a cause, for the purpose of determining the issues. Otherwise stated, a trial is a judicial investigation and determination of the issues be-

tween parties." 64 Tex.Jur.2d, Words and Phrases, Trial, p. 917 (1965). Our Supreme Court in Lawyers Lloyds of Texas v. Webb, 137 Tex. 107, 152 S.W.2d 1096, 1097 (1941), said: "The actual trial of a case, as ordinarily understood by the legal profession, is the hearing in open court, leading up to the rendition of judgment, on the questions of law, if the case is disposed of on the questions of law, or on the questions of fact, if the final judgment is rendered on the facts." A trial as commonly understood contemplates a judicial examination of all the issues of law and fact. Marrs v. Railroad Commission, 142 Tex. 293, 177 S.W.2d 941 (1944).

■ Applying the rules above set forth, we think it is clear that a trial was had. There was a hearing in open court, wherein contested matters were put in issue before a court of competent jurisdiction, and after such hearing a judicial determination was made by the court of such issues in controversy. If no appeal had been taken by either party, such hearing and judgment rendered therein would have been finally determinative of the issues in controversy by the parties. The quantum of evidence adduced on the hearing in the probate court or the fact that a trial de novo would have been had on appeal does not affect the question of whether a trial was had in the case.

■ We hold the court was correct in its holding that whatever interest plaintiff was entitled to under the contract as his attorney's fee, was a percentage interest of whatever defendants realized from the testamentary estate, rather than an undivided interest in the estate of decedent. Plaintiff relies on that portion of the contract of employment which states: "we do hereby sell, transfer, assign and convey unto the said Walter P. Brenan, our attorney, an undivided one-third or one-half interest in and to the share owned by us in the estate of Sophia E. Miller Ogg, as above stipulated." Said contract "stipulated" that defendants agreed and obligated themselves to "give and allow" plaintiff "as compensa-

tion" a percentage interest of whatever may be realized by them out of said estate. In contingent fee cases, a question frequently arises as to the nature of interest that passes to the attorney and the determination of this issue is governed by showing the intention of the parties, and this intention is determined primarily from an interpretation of the language of the instrument by which the assignment or transfer to the attorney was made. It is defendants' contention that the last above quoted portion of the contract, purporting to convey a present interest in the estate to plaintiff, was solely for the purpose of securing to plaintiff the compensation which he might be entitled to out of any recovery realized, either by settlement or after trial is had or suit is filed. It is to be noted that plaintiff filed in the records of Johnson County, Kansas, instruments designated as "affidavits of lien" in connection with said contract. Plaintiff acknowledges that since the contract was prepared by him and because of the relationship of attorney and client between him and defendants, the contract of employment is to be strictly construed against plaintiff. From an examination of the entire contract and record, we believe that the contract here under consideration is an executory contract for a contingent fee to be paid plaintiff, which did not convey to said attorney an interest in the estate. See Carroll v. Hunt, 140 Tex. 424, 168 S.W.2d 238 (1943).

Plaintiff, by his Point of Error No. 2, contends that the trial court erred in holding that in determining the net value of the estate of Mrs. Ogg there should be deducted the charges and expense of $8,247.51 paid as gift taxes on the 1958 gift of the 160-acre tract of land in Johnson County, Kansas and $4,178.52, being the interest on the delayed gift tax.

The gift tax return which was filed by the executrix after the death of Mrs. Ogg covered gift of the 160-acre tract of land in Johnson County, Kansas, made by Mrs. Ogg to defendants in the year 1958, on which a gift tax return should have been made by Mrs. Ogg prior to her death. Under the provisions of the Internal Revenue Code, a gift tax payable under the federal gift tax law is payable by the donor. I.R.C. § 2502(d). If a donor dies before the tax is paid, the amount of the tax is a debt to the United States from the decedent's estate and his executor or administrator is responsible for the payment thereof out of the estate. Harris, Handling Federal Estate Taxes Including Gift Taxes, § 552, p. 724; Regulation 25:2502-2 (1968). Tax Coordinator Q 1003. It is plaintiff's contention that since the gift tax is a lien upon the property given, and if the tax is not paid when due it is also a personal liability of donee, the court was in error in deducting the amount of such gift tax paid in determining the net value of the assets of the estate of Mrs. Ogg.

■ In resolving such question, it is of some importance to determine the nature of such tax. Although the tax is designated as a gift tax, it is not a direct tax on the property but on the exercise of the power of transmitting property. Brown v. Deputy, D.C., 30 F.Supp. 860 (1940). It is not the receipt of property which is taxed, but the transfer. The fact that the statute creates a lien does not change it from an excise tax to a direct tax on property. Harris, Handling Federal Estate Taxes, § 389, p. 540. Liability for the tax accrues on the date of the completed transfer. Harris, supra, § 424, p. 582.

■ The trial court did not err in holding that in determining the net value of the assets of the estate there should be deducted the amount of the gift tax paid on the 1958 gift.

Plaintiff, by Point of Error No. 3, asserts that the trial court erred in holding there should be no apportionment of the federal estate tax and state inheritance taxes that were payable by reason of the inclusion in the taxable estate of the value of the 160-acre tract of land deeded by Mrs. Ogg to defendants during her life

time. It is plaintiff's contention that while the 160-acre tract is properly a part of decedent's estate for the purpose of federal estate taxes, the 160-acre tract is a non-testamentary asset and there should be an equitable apportionment between the estate and the non-testamentary assets based on the relative values between the same.

While many states have apportionment statutes in this regard, neither the State of Texas nor the State of Kansas has any such apportionment statutes. The question of apportionment of such taxes is entirely within the jurisdiction of the various states. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106. We have found no Texas case in which the matter of apportionment has been passed on where there are non-testamentary assets in an estate for tax purposes, and in outside jurisdictions there is a division of authority on this question. See 37 A.L.R.2d 183.

It is undisputed that under the Internal Revenue Code any federal estate taxes payable are debts of the estate and are required to be paid by the legal representative of the estate, and this is also true of state inheritance taxes in both Texas and Kansas. This does not necessarily mean, however, that the doctrine of equitable apportionment cannot be invoked against one who receives property that is included in a taxable estate but which is not a testamentary asset. See Sinnott v. Gidney, 159 Tex. 366, 322 S.W.2d 507, 74 A.L.R.2d 544 (1959).

The property herein involved is located in Kansas, and the Supreme Court of Kansas in Central Trust Co. v. Burrow, 144 Kan. 79, 58 P.2d 469, held that where a testator made large gifts during his lifetime which were held subject to federal estate tax as made in contemplation of death, and the will made specific bequests and gave the residue to trustees, including donee, without provisions relieving the residuary estate from burden of tax, the executors were not entitled to reimbursement by donee for the proportionate share of tax. The will of Mrs. Ogg contained a provision that all her just debts be paid by her executor but contained no provision as to payment of taxes on transfers of property not passing under her will.

■ We believe the preferable rule is set forth by the Supreme Court of Kansas in Central Trust Co. v. Burrow, supra, and hold that the trial court did not err in its holding that there should be no apportionment. In any event, since under the contract defendants obligated themselves to give to plaintiff as compensation a percentage interest of whatever might be realized by defendants out of said estate, the trial court correctly allowed and charged against the estate the full amount paid as federal estate taxes and state inheritance taxes, in determining "whatever might be realized" by the defendants out of the estate. Plaintiff's Point of Error No. 3 is overruled.

Defendants, in their Point of Error No. 1, assert that the court erred in refusing to deduct certain travel expenses and interest payments paid by defendants, in determining the amount realized by defendants from the estate.

It appears from the record that Mrs. LaMotte qualified as independent executrix of the estate of Sophia E. Miller Ogg on April 28, 1967. In their brief defendants state that the amount of such travel expenses is $839.45, and in support thereof refer to checks shown in plaintiff's Exhibits 26–31 and defendants' Exhibit 1. The six checks shown in plaintiff's Exs. 26–31 consist of checks to American Express, Hertz Corp., Hilton Inn, and Braniff Airlines and do not aggregate exactly $839.45. Four of such checks are dated prior to the time Mrs. LaMotte qualified as independent executrix, and those four checks are approximately two-thirds of such amount of $839.45. Defendants' Ex. 1 consists of a number of checks aggregating a great deal more than $839.45, none of which on their face appear to be connected with travel. There is some intimation in the record

that some of such travel expenses were incurred in connection with the dispute between plaintiff and defendant.

The interest payments referred to are on a loan made by defendants from a bank in Kansas in the amount of $75,000.00. The record contains a copy of a note dated Sept. 28, 1967, in the amount of $75,000.00, payable to Patrons Cooperative Bank, payable ninety days after date, and signed by defendants individually. This note contains a notation thereon, "Assignment of funds due from sale of N ½ of NW ¼ of 7–14–24, and S ½ of NW ¼ of 7–14–24 Johnson County, Kansas." Such note was thereafter renewed by another note, but the record does not contain a copy of the new note. The record does contain a copy of the deed of conveyance of the above referred to property, dated Sept. 28, 1967, with a letter from the Patrons Cooperative Bank acknowledging receipt of the original of such deed, and states that the deed will be held in escrow and delivered to the purchaser when title is approved and upon payment of $87,000.00 by the purchaser. Plaintiff asserts that he was willing at all times to join in such deed if the proceeds were used to pay estate and inheritance taxes or placed in escrow, and offered to do so, but this is denied by defendants. Defendants testified that the amount of such loan was arrived at through an estimate of the amount necessary to cover taxes and other estate expenses. There is nothing in the record to show how much of such funds are still on hand or whether any of those funds were used for other purposes.

■ The record does not substantiate that such items of expense referred to under defendants' first point of error were necessary and proper expenses of the estate, and the court did not err in disallowing such items.

■■ Defendants' Point of Error No. 2 is that "plaintiff was not entitled to have an amount awarded to him as and for statutory attorneys' fees for bringing and maintaining this suit." The judgment of the trial court provided that plaintiff have and recover the sum of $5,000.00 as reasonable attorney's fees for bringing and prosecuting this suit for recovery of compensation for legal services rendered by him. Art. 2226, Vernon's Ann.Civ.St., authorizes a recovery of reasonable attorney's fees by a person having a valid claim for personal services rendered. Statutes authorizing a recovery of attorney's fees are penal in nature and are to be strictly construed. New Amsterdam Casualty Co. v. Texas Industries, Inc., 414 S.W.2d 914 (Tex.Sup.1967); Van Zandt v. Fort Worth Press, 359 S.W.2d 893 (Tex.Sup. 1962); Perry v. Leuttich, 132 Tex. 159, 121 S.W.2d 332. The suit herein was a declaratory judgment proceeding for a judicial construction of a written contract of employment between plaintiff and defendants in which there was a bona fide dispute between the parties as to the nature and extent of plaintiff's interest under such contract. Plaintiff did not make any claim for an allowance of statutory attorney's fees by any pleading in this suit, and no evidence was offered in support of any claim for attorney's fees in this regard. The action of the trial court in awarding plaintiff a recovery of $5,000.00 for statutory attorney's fees for bringing and maintaining this suit is not supported by the record. New Amsterdam Casualty Co. v. Texas Industries, Inc., supra; Great American Reserve Ins. Co. v. Britton, 406 S.W.2d 901 (Tex.Sup.1966); Schecter v. Folsom, 417 S.W.2d 180 (Tex.Civ.App.— Dallas 1967, no writ); Johnson v. Universal Life & Accident Ins. Co., 127 Tex. 435, 94 S.W.2d 1145 (1936); Rhoades v. Miller, 414 S.W.2d 942 (Tex.Civ.App.— Tyler 1967, no writ); Texlite, Inc. v. Wineburgh, 373 S.W.2d 325 (Tex.Civ.App. —Dallas 1963, writ ref'd n. r. e.).

The judgment of the trial court is hereby reformed to provide that plaintiff is entitle to have and receive as his attorney's fees under the contract of employment an amount equal to one-half of the net value of the testamentary assets on hand in the

estate of Sophia E. Miller Ogg, deceased, and is further reformed by disallowing and striking out the award of $5,000.00, attorney's fees, for bringing and prosecuting this suit. In all other respects the judgment of the trial court is affirmed. The trial court found that in determining the net value of the assets of the estate of Sophia E. Miller Ogg, there should be deducted charges and expenses in the sum of $61,219.30, and that, after deducting such items, the value and amount of the remaining assets realized by defendants out of and from the estate of Sophia E. Miller Ogg was $89,812.85, which sum this Court finds to be correct. As reformed, plaintiff is entitiled to have and recover an amount equal to one-half of said $89,812.85, which is the sum of $44,906.42, and from this there is to be deducted the amount of the retainer fee of $5,000.00, leaving the amount of $39,906.42 due and payable to plaintiff by defendants, for which amount plaintiff is entitled to judgment against defendants. The costs of this appeal are to be paid one-half by plaintiff and one-half by defendants.