In the Matter of the John B. RINALDO REVOCABLE TRUST and the Ruth Bauer Rinaldo Revocable Trust

Gerald Bauer and Beverly Bauer, Appellees,

v.

Lisabeth A. Sterling, Robin Sterling Brewer, Debra Dean Sterling, Mary Pat Glaves, Peter M. Ramsey, Timothy R. Ramsey, David W. Rinaldo, Marjory Rinaldo–Lee, John M. Rinaldo, Phillip S. Rinaldo III, Heather Amaral, and Jennifer Peatman, Appellants,

and

Randal B. Caldwell and Peter M. Rinaldo, Trustees.

No. 03–2051.

Supreme Court of Iowa.

May 6, 2005.

42

John F. Fatino of Whitfield & Eddy, P.L.C., Des Moines, for appellants.

Edward E. Johnson, Cynthia A. Hurley, and Megan M. Althoff Wolfe of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees.

Randal B. Caldwell of Caldwell, Caldwell & Caldwell, P.L.C., Newton, for the trustees.

CARTER, Justice.

The nieces and nephews of John B. Rinaldo, who are distributees of certain trust assets, appeal from a district court decree requiring contribution toward federal and Iowa estate tax liability that those assets generated in the taxable estate of Ruth Bauer Rinaldo. The appellees are Gerald Bauer, a distributee of other assets from the John B. Rinaldo Trust, who sought the order compelling contribution, and his wife, Beverly Bauer. Parties to the appeal also include Randal B. Caldwell and Peter M. Rinaldo, as trustees of the trust. The trustees sided with the nieces and nephews in the district court, but argue no position on the appeal.

The trust instrument provided that, on the death of John B. Rinaldo's surviving spouse, Ruth Bauer Rinaldo, one subtrust (the marital trust) was to pour over into another subtrust (the family trust) from which distribution was to be made to Rinaldo's nieces and nephews and to Gerald Bauer. The assets designated to pour over consisted of stock in a closely held family corporation and assets contained in a brokerage account with Merrill Lynch. All of the stock in the closely held corporation was ultimately to be distributed to the nieces and nephews plus a portion of the brokerage account. Gerald Bauer was to receive the remainder of the brokerage account. The trust instrument provided that, before pouring over into the family trust, the assets of the marital trust, which consisted of the closely held corporate stock and the Merrill Lynch brokerage account, should be used by the trustees to pay a proportionate share of any federal or

Iowa estate tax liability that those assets generated in the estate of Ruth Bauer Rinaldo.

Gerald Bauer petitioned the district court requesting an order providing that the federal and Iowa estate tax liability generated in the Ruth Bauer Rinaldo estate by the closely held stock and the brokerage account assets be satisfied by depleting both the closely held stock and the Merrill Lynch assets in a manner proportionate to the value of each of those classes of assets. The district court so ordered and also ordered indemnification of Gerald Bauer to the extent that he had been aggrieved from a failure to adhere to that plan of abatement in the administration of the trust. After reviewing the record and considering the arguments presented, we affirm the district court's decree, although for reasons somewhat different than those expressed in that court's ruling.

The parties base the factual portion of their arguments on the "Stipulation of Facts for Purposes of Hearing on Combined Petition Concerning the Internal Affairs of Trusts and Granting" filed on August 19, 2003, in the Iowa District Court for Polk County. The district court relied upon this stipulation for its decision. The stipulated facts included the following. Appellants, Lisabeth A. Sterling, Robin Sterling Brewer, Debra Dean Sterling, Mary Pat Glaves, Peter M. Ramsey, Timothy R. Ramsey, David W. Rinaldo, Marjory Rinaldo–Lee, John M. Rinaldo, Phillip S. Rinaldo III, Heather Amaral, and Jennifer Peatman (nieces and nephews), are beneficiaries of the John B. Rinaldo Revocable Trust created under the John B. Rinaldo "1st Amended and Substituted Revocable Trust Agreement" (John B. Rinaldo Trust) and the Ruth Bauer Rinaldo Revocable Trust created under the "Ruth Bauer Rinaldo 1st Amended and Substituted Revocable Trust Agreement" (Ruth Bauer Rinaldo Trust). Appellee, Gerald Bauer, is also a beneficiary under both trusts.

John B. Rinaldo died on November 27, 1999. He was survived by his widow, Ruth Bauer Rinaldo. Mr. Rinaldo's property passed pursuant to the terms of the John B. Rinaldo Trust, which was executed on January 15, 1997. At the time of Mr. Rinaldo's death, the property of the John B. Rinaldo Trust consisted primarily of 3080 shares of stock in Flexible Steel Lacing Co. (stock) and various publicly held investments in a Merrill Lynch brokerage account (Merrill Lynch account). The stock was valued at $1,389,080. The Merrill Lynch account was valued at $2,367,360.

Under the terms of the John B. Rinaldo Trust, if Mrs. Rinaldo survived her husband, two subtrusts would be created. Because Mrs. Rinaldo survived her husband, a family trust and a marital trust were created in accordance with the terms of the John B. Rinaldo Trust. Article III of the John B. Rinaldo Trust provided that a portion equal to the amount that could legally be sheltered from federal estate tax be allocated to the family trust. The applicable shelter amount at the time of Mr. Rinaldo's death was $650,000. The remaining property in the John B. Rinaldo Trust was to be allocated to the marital trust. Following Mr. Rinaldo's death, the assets of the John B. Rinaldo Trust were allocated in this manner: (1) a portion of the Merrill Lynch account in the amount of $650,000 was placed in the family trust and (2) all 3080 shares of the stock and the remaining portion of the Merrill Lynch account ($1,717,360) were placed in the marital trust.

On March 21, 2001, Mrs. Rinaldo passed away. She had a general power of appointment with regard to the principal of the marital trust; however, she did not

exercise this power. As a result, the property of the marital trust passed to the family trust pursuant to the default provisions in Article V of the John B. Rinaldo Trust.[1] It was expressly provided, however,

> before such distribution to the FAMILY TRUST, the Trustee shall pay from the principal of the MARITAL TRUST its pro rata share of all inheritance, estate, succession, or other similar taxes otherwise payable by the Trustor's spouse's estate, or the recipients thereof, resulting from the inclusion of the MARITAL TRUST assets in the Trustor's spouse's estate.

The property contained in the family trust, including the assets poured over from the marital trust, were to be distributed as follows, pursuant to Article VI, paragraph B, subparagraphs 1 and 2 of the John B. Rinaldo Trust:

> Any interest held by the trust in Flexible Steel Lacing Co., or its successor in interest, shall be distributed in equal shares to Settlor's nieces and nephews....
>
> 3. The remaining assets of the trust shall be distributed as follows:
>
> (a) One-quarter (1/4) of said assets shall be distributed to Settlor's brother-in-law, Gerald L. Bauer....
>
> (b) Three-quarters (3/4) of said assets shall be distributed in equal shares to the nieces and nephews of Settlor....

The value of the assets in the marital trust, as determined for federal and Iowa estate tax purposes, was $3,607,477. The value of the closely held stock was $1,478,400, and the value of the assets in the brokerage account was $2,129,077.

Thus, the assets in the brokerage account constituted fifty-nine percent of the total value of the marital trust, and the closely held stock constituted forty-one percent of that total value.

## I. *Scope of Review.*

■ This matter was tried in the probate court as an equity matter under Iowa Code section 633.33 (1999). In an equity action, review by the appellate court is de novo. *In re Estate of Roehlke*, 231 N.W.2d 26, 27 (Iowa 1975); Iowa R.App. P. 6.4.

## II. *The District Court's Decision.*

Gerald Bauer's request for a pro rata abatement of the closely held stock and the brokerage account assets for purposes of paying the federal and Iowa estate taxes that those assets generated was resisted by the nieces and nephews. They contended that the distribution scheme of the trust created two categories of assets, one of which, the closely held stock, constituted specific bequests, and the other, the brokerage account assets, constituted residual bequests. Based on that premise, the nieces and nephews urged that the residuary bequest, i.e., the brokerage account assets, should abate first, as is the case with testamentary bequests pursuant to Iowa Code sections 633.436 and 633.449.

Gerald Bauer argued in the district court that the abatement statutes relied on by the nieces and nephews had no application to a revocable inter vivos trust. The district court rejected that contention and concluded that sections 633.436 and 633.449 were generally applicable to trusts of this type. The court determined, however, that those statutes had no application

---

1. In this regard, the language of Article V, paragraph B, subparagraph 2 of the trust instrument provides: "Any of the principal of this trust over which the Trustor's spouse does not effectively exercise his [her] general power of appointment shall be distributed to the Trustee of the FAMILY TRUST...."

in the present dispute because the trust instrument expressly designated which assets should abate for purposes of paying the federal and Iowa estate taxes generated by the trust assets as a whole.

After determining that the abatement provisions in section 633.436 and 633.449 did not apply, the district court concluded that equitable principles supported a pro rata abatement of the two categories of assets that were to pour over from the marital trust to the family trust. The court further concluded that, unless a pro rata abatement of those assets was ordered, the result would be a violation of federal law as expressed in 26 U.S.C. § 2207. The court directed that the trustees make payment of the federal and Iowa estate taxes resulting from marital trust property by abating the brokerage account assets with regard to fifty-nine percent of the resulting tax liability and abating the closely held corporate stock with regard to forty-one percent of that liability. The court further ordered that, to the extent Gerald Bauer had been aggrieved from a failure to adhere to that plan of abatement in the administration of the trust, he should be indemnified by the trust or its other distributees.

### III. *Analysis.*

■ A. *Application of Iowa Code sections 633.436 and 633.449.* The contention of the nieces and nephews is premised on a scheme of abatement contained in Iowa Code sections 633.436 and 633.449. These statutes, set forth in inverse order, provide as follows:

> All federal and state estate taxes (as distinguished from state inheritance taxes) owing by the estate of a decedent shall be paid from the property of the estate, unless the will of the decedent, or

other trust instrument, provides expressly to the contrary.
Iowa Code § 633.449.

> Except as provided in section 633.211 and 633.212, shares of the distributees shall abate, for the payment of debts and charges, federal and state estate taxes, legacies, the shares of children born or adopted after the making of a will, or the share of the surviving spouse who elects to take against the will, without any preference or priority as between real and personal property, in the following order:
>
> 1. Property not disposed of by the will;
>
> 2. Property devised to the residuary devisee, except property devised to a surviving spouse who takes under the will;
>
> 3. Property disposed of by the will, but not specifically devised and not devised to the residuary devisee, except property devised to a surviving spouse who takes under the will
>
> . . . .

Iowa Code § 633.436.

The nieces and nephews equate the assets in the Merrill Lynch brokerage account with "property devised to the residuary devisee," for purposes of applying section 633.436(2). Although the district court concluded that these statutes were generally applicable to revocable inter vivos trusts of this type, we entertain considerable doubt as to whether that conclusion was correct. We need not decide that matter, however, because, as the district court noted, there is another valid reason for rejecting the contentions of the nieces and nephews.

The abatement provisions in section 633.449 are qualified by the words "unless the will of the decedent, or other trust instrument, provides expressly to the con-

trary." The general order for abatement set forth in section 633.436 is qualified by the provisions of section 633.437(1), which provide:

> When provisions of the will, trust or other testamentary instrument of the decedent provide explicitly for an order of abatement contrary to the provisions of section 633.436, the provisions of the will or other testamentary instrument shall determine the order of abatement.

The trust instrument in the present case provided that payment of a pro rata share of the state and federal estate taxes was to be made by the trustee from the assets contained in the marital trust. This was an explicit order of abatement different from that contained in the statutes on which the nieces and nephews rely.

We considered an analogous situation in a formal probate setting in *In re Estate of Ohrt*, 585 N.W.2d 259 (Iowa 1998). In that case, there was both real and personal property in the estate. The will provided that all debts and taxes should be paid from the personal property before any distribution was made to beneficiaries. Relying on section 633.436, a beneficiary who had received a bequest of specific items of personal property contended that the personal property passing under the will's residuary clause should abate first. We rejected that contention, holding that, because the will provided that the debts were to be first paid from personal property "without regard to the character of the disposition of that property," all personal property should abate ratably. *Ohrt*, 585 N.W.2d at 262. The district court's conclusion that the two classes of assets in the marital trust should abate ratably for pur-

poses of satisfying the tax liability generated by those assets is consistent with *Ohrt*.

B. *Scheme of abatement in the absence of Iowa statutory law.* In ordering a pro rata abatement of all assets contained in the marital trust without regard to their character, the district court relied on equitable principles and was also influenced by federal law. Section 2207 of 26 U.S.C. provides:

> Unless the decedent directs otherwise in his will, if any part of the gross estate on which the tax has been paid consists of the value of property included in the gross estate under § 2041, the executor shall be entitled to recover from the person receiving such property by reason of the exercise, nonexercise, or release of a power of appointment such portion of the total tax paid as the value of such property bears to the taxable estate. If there is more than one person the executor shall be entitled to recover from such persons in the same ratio.

A regulation accompanying 26 U.S.C. § 2205 provides:

> If any portion of the tax is paid by or collected out of that part of the estate passing to, or in the possession of, any person other than the duly qualified executor or administrator, that person may be entitled to reimbursement, either out of the undistributed estate or by contribution from other beneficiaries whose shares or interests in the estate would have been reduced had the tax been paid before distribution of the estate
>
> . . . .

Treas. Reg. § 20.2205–1.[2] The district court concluded that 26 U.S.C. § 2207 and

---

**2.** The statute from which this regulation is derived provides:

> If the tax or any part thereof is paid by, or collected out of, that part of the estate passing to or in the possession of any per-

son other than the executor in his capacity as such, such person shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest

the regulation accompanying 26 U.S.C. § 2205 provide for a pro rata abatement of assets to satisfy the tax and, in addition, provide Gerald Bauer with a right of indemnification from the trust or other trust distributees if a disproportionate share of the federal estate tax was paid from assets otherwise distributable to him. We are not convinced that these federal statutes and regulations may be applied as rules of decision governing the present controversy.

The situations at which these statutes are directed do not exist in the present case. Section 2205 contemplates a situation in which the tax has been paid from or collected out of a portion of the taxable estate not within the control of the executor or trustee. That cannot happen here because the trustees are required to pay the tax from explicitly designated assets prior to their distribution. Section 2207 contemplates a situation in which an executor or trustee may reach out to distributions passing by a power of appointment and compel contribution with regard to the tax those assets have generated. The statute expressly provides that this should not occur if the decedent directs otherwise in his will. To the extent that 26 U.S.C. § 2207 may apply to dispositions made through a trust, consistency requires that the statutory provisions not apply where, as here, the settlor establishes a different abatement scheme in the trust instrument.

■ We are satisfied that this is a case properly decided under state law. In interpreting an identical version of 26 U.S.C. § 2205 as it appeared in the Internal Rev-

enue Code of 1939, the Supreme Court concluded:

> [W]hile the federal statute normally contemplates payment of the tax before the estate is distributed, provision is made for collection of the tax if distribution should precede payment. If any distributee is thus called upon to pay the tax, [the statute] provides that such person "shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate". By that section Congress intended to protect a distributee against bearing a greater burden of the tax than he would have sustained had the tax been carved out of the estate prior to distribution . . . .

*Riggs v. Del Drago*, 317 U.S. 95, 100–01, 63 S.Ct. 109, 112, 87 L.Ed. 106, 112 (1942) (citations omitted). The Court went on to say in *Riggs*: "[T]he final impact of the tax shall be the same as though it had first been taken out of the estate before distribution, thus leaving to state law the determination of where that final impact shall be." *Id.* at 101, 63 S.Ct. at 112, 87 L.Ed. at 112–13.

Clearly, the provisions in 26 U.S.C. § 2205 are not intended to be applied as general rules of abatement that supplant state law. If that were the case, the laws of a majority of jurisdictions that call for payment of the federal estate tax from the residue of the estate would be rendered unconstitutional. This was recognized in *United States v. Goodson*, 253 F.2d 900, 904–05 (8th Cir.1958), in which the court

---

in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate or whose interest is subject to equal or prior liability for the payment of taxes, debts, or other charges against the estate, it being the pur-

pose and intent of this chapter that so far as practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution. 26 U.S.C. § 2205.

reiterated that, as determined in *Riggs,* the final impact of the tax should be left to state law. *Goodson,* 253 F.2d at 902.

Notwithstanding our conclusion that federal law does not apply, we are convinced that, under controlling state law, the district court's decision was correct both as to the federal estate tax and the Iowa estate tax. As previously noted, the district court's order for a pro rata abatement of the two types of assets contained in the marital trust is wholly consistent with our decision in *Ohrt* with respect to trusts or wills designating the abatement of a general class of property without further distinction as to character. *Ohrt,* 585 N.W.2d at 262. The nieces and nephews argue that the settlor of the trust did not intend the result arrived at by the district court due to the ready liquidity of the Merrill Lynch account and the settlor's desire to keep a family business intact. However, the bequest to the nieces and nephews of a substantial portion of the Merrill Lynch account assets provides a means for satisfying the latter desire. Moreover, we believe the nieces' and nephews' advocacy of the settlor's intent based on circumstantial evidence is outweighed by the disproportionate effect their proposed abatement would have on the distributive scheme that the settlor established. As we have recognized in an analogous case in which we determined priority between devises of the same class:

> "[T]he recognized rule is that where [general legacies] are mere bounties as distinguished from legacies given upon some consideration, they abate pro rata, unless an intention to create a preference may be gathered either from the express terms of the will or the reasonable implications thereof. *The presumption is that equality was intended, and the burden is on the legatee to show an intention that he should have a preference.*"

*In re Estate of DeVoss,* 474 N.W.2d 542, 545 (Iowa 1991) (quoting 80 Am. Jur. 2d *Wills* § 1741, at 795 (1975)).

We also believe that the district court's disposition is consistent with the equitable principles to which this court resorted in *Kintzinger v. Millin,* 254 Iowa 173, 192, 117 N.W.2d 68, 79 (1962), in apportioning the burden of the federal estate tax. Although *Kintzinger* no longer applies to situations in which sections 633.436 and 633.449 now apply, *see Bergren v. Estate of Mason,* 163 N.W.2d 374, 377 (Iowa 1968), those statutes have no application here. The *Kintzinger* case also supports that portion of the district court's order that requires Gerald Bauer be indemnified to the extent that he has been aggrieved from a failure of the trustees to adhere to the plan of abatement that the court has directed. *Kintzinger,* 254 Iowa at 193, 117 N.W.2d at 80 (ordering indemnification of executor by distributee of nonprobate property for purposes of equalizing burden of estate tax among probate and nonprobate distributees).

We have considered all arguments presented and conclude that the decree of the district court should be affirmed.

**AFFIRMED.**

All justices concur except WIGGINS, J., who takes no part.