S. Samuel Di Falco, S.
The principal question raised by objections to the account of the executor is whether the United States estate tax should be allocated against -legacies bequeathed in the Mexican will of the decedent. The parties have agreed *181 to submit the matter on affidavits without formal hearing. The facts, except for opinions on Mexican law, are not in dispute.
The decedent was a citizen of the United States, domiciled in Mexico City, who possessed substantial assets in New York and in Mexico. On May 14, 1965 she executed a will in New York which disposed of all of her property “ wheresoever situate ”, directed that, regardless of her domicile at death, her will be offered for probate in New York County, that the administration of her estate be conducted subject to the jurisdiction of this court, and that her will and all dispositions therein be construed and regulated by the laws of the State of New York. The residuary estate was bequeathed in equal shares to two friends, one of whom resided in Brooklyn and the other in El Paso, Texas. The latter is the objectant here.
Paragraph Fourth of the will — which immediately precedes the residuary clause — reads as follows: “ I direct that any and all estate, inheritance and similar taxes and interest and penalties thereon if any which my executor may be required to pay by reason of my death, whether based on the value of property passing under this will or otherwise, be paid out of my residuary estate without apportionment. ”
On January 20, 1966 — approximately eight months after the execution of her will in New York — the decedent executed a notarial will in Mexico City. An English translation of the Spanish text is incorporated in the probate decree of this court. The will contains several general legacies expressed in Mexican currency and “ for the remainder of her estate [the testatrix] institutes as her sole heirs in equal one-third shares ” three individuals, all residents of Mexico City. This instrument made no mention of the New York will and no reference at all to estate taxes. It declares that “ the testamentary provisions contained in this instrument shall apply only to the property or money which the testatrix has in the Mexican Republic ”, and it appoints Mexican executors. A second notarial will was executed in Mexico on April 25,1966. It is actually a codicil to the January will, revoking one general legacy and also the institution of one of the three as an heir, leaving the other two persons “as the sole heiresses in equal parts.” This instrument also is silent with respect to estate taxes and their impact.
The decedent died in Mexico on April 22, 1967. Her New York will and the two notarial instruments were offered for probate in this court. Preliminary letters testamentary were issued to the executor named in the New York will on June 2, 1967. By decree dated June 5,1968 this court found that the will dated *182 May 14, 1965 had been duly executed, that the instruments in the Spanish language dated January 20, 1966 and April 25,1966 had been duly established as testamentary instruments in accordance with the laws of Mexico, and that the English translations offered for probate were true translations of the Spanish original. It decreed that the three paper writings be admitted to probate ‘ ‘ as together constituting the last will and testament of the said Bessie Owen, deceased ”. Letters testamentary were directed to issue to Bankers Trust Company, the executor named in the New York will, “ provided that such letters testamentary, and the authority, responsibility and accountability of Bankers Trust Company thereunder, shall not extend to property, money or matters administered in Mexico but shall otherwise be unlimited.” Such letters were issued on June 7, 1968.
The executor paid to the Internal Revenue Service a Federal estate tax of $311,689.75. . It was paid in full from the New York residuary estate. The objectant asserts that the Mexican property constituted approximately 46% of the taxable estate. She contends that the executor was obliged to allocate a pro rata share of the Federal estate tax against the property disposed of in the Mexican will, and that the failure to make the allocation and to collect the prorata share of the tax was a breach of fiduciary obligation for which the executor is liable to the object-ant. She argues that New York law, as well as Mexican law, requires, that the tax be equitably allocated.
There is difference of opinion over the characterization of the Mexican instruments, whether they are properly referred to as codicils to the New York will, or as a separate will disposing of a separate and distinct fund. In Matter of Gifford (279 N. Y. 470, 477), Judge [later Chief Judge] Lehman discussed the practice of making separate testamentary instruments for property located in different countries. He said: “ We know that at times American citizens and others having personal property both here and abroad, make separate testamentary disposition of their property abroad. In such case the courts in each country probate the will or wills referring to property there. Even the courts of the country where the testator was domiciled do not grant probate or issue letters testamentary upon a will which refers only to personal property in another jurisdiction. That was decided centuries ago in Jauncy v. Sealey ([1686] 1 Vern. 397).” That practice is followed here, and, ordinarily, this court would not attempt to probate instruments which dispose only of property located outside the State of New York. In this case the will which disposed of property here did in terms pur *183 port to dispose of property wherever located. This court was, therefore, required to examine the later Mexican wills in order to determine whether and to what extent the New York will was modified or amended. This court stated in its decree that the New York executor was to have no responsibility whatever with respect to property located in Mexico, thus indicating a modification of the New York will by the later instruments. It was for the purpose of revealing such modification, and that purpose only, that the court admitted to probate the instruments which had already been established at the domicile and which disposed only of property at the domicile.
It makes little difference how we characterize the later instruments or their relationship to the first one. The precise term is not important; it is the substance that counts. What this court said in its decree seems so clear as to permit no reasonable dispute, namely “ that said three paper writings ” together constitute the last will and testament of this decedent. To determine her testamentary intent, one must look at all three instruments.
The affidavits and the argument of counsel indicate that there were discussions during the administration of the estate in respect of the possibility and the propriety of allocating estate taxes against the Mexican property. Both the executor and the objectant consulted Mexican counsel and, not unexpectedly, they received divergent opinions. The executor’s counsel made some attempt to work out an amicable agreement with the Mexican beneficiaries, but that effort was not successful.
Much of the argument is based upon section 2-1.8 of the Estates, Powers and Trusts Law (formerly Decedent Estate Law, § 124). This statute is not generally applicable to nondomiciliaries. (Matter of Berne, 74 N. Y. S. 2d 887, 890.) However, it is argued that this decedent made the disposition of her property subject to the laws of the State of New York and has directed that her New York will be construed in accordance with New York law; hence that her intent is to be read against the background of this statute.
When the decedent drew her will in May, 1965, it unquestionably embraced and disposed of all of her property, wherever located. She said so in explicit terms. She must have been fully aware of her property in Mexico. At all times pertinent here her domicile was in Mexico. It is true that in directing probate and administration in New York County, she gave as her reason 1 ‘ the fact that my securities are managed and physically situated in said County of New York and I maintain monies on deposit in a bank or banks in the City of New York.” That text, standing *184 alone, might lead one to infer that the decedent was thinking in terms only of her New York assets and was disposing only of them. Such an inference, however, cannot fairly be drawn when other portions of the will are examined. In any event, the declaration of intent in the fourth paragraph of her will is so clear as to leave no room for argument. She directed that “ any and all estate taxes ” which her executor was required to pay, ‘ ‘ whether based on the value of property passing under this will or otherwise ”, be paid out of her' residuary estate ‘ ‘ without apportionment. ’ ’ The disposition of her residuary estate immediately followed. Her executor is required by statute to pay the entire estate tax to the Government. (Internal Revenue Code [IT. S. Code, tit. 26], § 2002.) Distribution of the impact of the tax among beneficiaries is a matter of State law. This decedent turned her attention to this tax burden and clearly said how it was to be borne.
We may try to guess whether, at the time of making the New York will, the decedent had actually planned to make a Mexican will upon return home, or whether the Mexican will was an afterthought. We may speculate whether she remembered what she had said in her New York will about estate taxes and stood firm on that directive, or whether she had forgotten about estate taxes or may not have been advised that a United States tax would be imposed upon her Mexican estate. But all this would be pure guesswork, and the only safe and sure guide to what was in her mind is the written expression of intent in plain and simple words. Words, as Ruskin has said, may sometimes be the unjust steward of ideas, converting to their own use a message committed to them. When they are, however, the only delegate of an idea, they are a much safer guide than guess or surmise. Those are the only choices here.
We are not unmindful of the inequality of treatment of the two classes of what we call residuary legatees and what in the translation of the notarial will are called the “ sole heirs”. Inequality naturally follows when the impact of taxes is lifted from one and imposed upon another who takes the burden without the benefit; but everyone takes through decedent’s bounty, and she may give or withhold or give on condition, as she pleases. When the impact of taxes is explicitly directed by her, we may not disregard her command in order to serve what we think is a more fair division of her property.
It is argued that the New York residuary clause originally covered the Mexican property, that this body of property was removed from the compass of the New York will and fitted *185 within the terms of a different dispositive instrument, with the result that neither the residuary clause nor the tax clause of the New York will continue to govern the Mexican property. Every codicil — or what is its equivalent, a later limited disposition of property — does take something from the residue because of the very nature of a residue. However, in this case, a later disposition does not take anything from the tax clause, because of the wide scope of the wording of that provision.
The Estates, Powers and Trusts Law is cited as authority which requires each instrument to contain its own tax apportionment directive. That statute says: 1 ‘ Any direction as to apportionment or non-apportionment of the tax, whether contained in a will or non-testamentary instrument, relates only to the property passing thereunder, unless such will or instrument provides otherwise.” (EPTL 2-1.8, subd. [d]). Here the will does explicitly provide otherwise. Much is made of the failure of the Mexican will to deal with estate taxes. It is not necessary that the Mexican will confirm the New York provision or even advert to it. One instrument could hardly mandate a burden on a fund disposed of in a different instrument, and hence the Mexican will could do nothing with respect to taxes paid in New York except to assume its own burden or to keep silence, letting it fall where it may. The dispositions outside the New York will — and this includes those in the Mexican will — were relieved of the tax burden by the New York will. Had the Mexican will assumed its own share, we would, of course, have read both wills together as revealing an over-all purpose. Its silence on that subject does not justify this court in reading the Mexican will against the background of policy expressed in a New York statute, especially where the New York will has spoken in clear terms on that subject.
It is also argued that, regardless of the New York law on that question, the law of Mexico would require the Mexican executors to pay to the New York executors their prorata share of the tax. The question was never submitted to a Mexican court for decision. Contradictory opinions of two Mexican attorneys have been submitted. These letters represent nothing but the mere opinion of the writer that a share of the tax was or was not collectible. A third opinion is attached to objectant’s reply brief, wherein the writer does not merely give his opinion but cites authority for each statement that he makes. With respect to claims allowable in Mexico, he says: “ In order to be legally recognized as a creditor, the American executor should have proved the legitimacy of the credit. Mexican law considers *186 valid a debt originated in a foreign country according to foreign law is applicable to the particular ease. If the Mexican judge receives evidence that pursuant to American Law there is a debt that is legitimate, and that the formalities which originated the debt are in accordance with the American Law, he must recognize the legality and legal existence of that debt in Mexico (article 15 of the Civil.Code for the Federal District). As we have stated, if the Mexican judge has evidence that the debt originated in a foreign country exists and is legitimate, he must recognize it and resolve that the assets of the estate located in Mexico be destined proportionately to the payment of that debt. ’ ’
The Mexican attorney assumes that the pro rata share of the estate taxes would be a “ legitimate debt ’ ’ of the estate in Mexico according to the laws of the United States. The difficulty with the objectant’s argument is that under the law of New York, where her estate is being administered, the entire burden of the estate taxes is placed upon the New York residuary estate. The claim of objectant is not a legal debt of the estate to her, and under the terms of the will which makes her a legatee she has no right to have the tax allocated or proportioned against any other beneficiary except for her colegatee.
The ■ executor, it is argued, should have brought suit in Mexico against the Mexican executors and beneficiaries prior to the decree of distribution by the Mexican court.' It would then have obtained a definitive judicial determination of the liability or immunity of the Mexican assets under Mexican law. An executor is not bound to put the estate to the expense of a lawsuit which he is advised would be fruitless. The executor consulted New York and Mexican counsel and was advised by both that there was no right of recovery. Even the final opinion of counsel submitted by objectant actually confirms that view although assumptions made by the author led him to a different conclusion. The failure of the executor to seek a Mexican judicial decision cannot be said, under such circumstances, to constitute a neglect of duty.
Objections 1, 2 and 3 are, therefore, overruled. Objection 4 is directed to the attorneys ’ fees. All issues were submitted on affidavits and memoranda, a hearing having been waived. In view of the size of the estate, the time spent, the complications and the unusual features, the court finds that the sum of $30,000 is reasonable compensation for all services rendered, including services in the present accounting proceeding. Objection 4 is overruled.
*187 The executor has a personal claim for custodial fees up to the date of the decedent’s death. A more complete affidavit in support of that claim must be filed. The court will determine that claim upon settlement of the decree.
There being no objection, the assets reported as worthless in Schedule B may be abandoned.