OPINION OF THE COURT
Bernard L. Reagan, S.
In this proceeding a question arises with regard to the allocation of Federal estate taxes. The petitioner is the trustee in respect of an inter vivos trust created by Katheryn B. Edwards on August 13, 1963, while a resident of the State of New York.
The facts briefly stated are as follows:
1. On July 10, 1963 the decedent, then a domiciliary of the State of New York, executed a will devising her entire estate to her daughter.
2. On August 13,1963, while still a resident of the State of New York, the decedent entered into a written agreement with Marine Midland Trust Company of Central New York (now Marine Midland Bank, N. A.), as trustee of an inter vivos trust. The grantor of said trust was the primary life beneficiary and retained a power of appointment.
3. The decedent died on December 9, 1979, a resident of Cuernavaca, Morelos, Mexico.
*704 4. The decedent’s will was granted original probate by Probate Court No. 2 of Harris County, Texas, on February 20, 1980.
The probate estate amounted to $192,509.
Value of the inter vivos trust at the time of death was $456,812,
The net estate tax due is $160,437.
On or about February 20, 1981, the executrix of the estate of Katheryn B. Edwards, through her attorneys, demanded the trustee (Marine Midland Bank, N. A.) pay a proportionate share of the Federal estate tax by reason of the inclusion of trust funds in the taxable estate, in the amount of $112,871.44, plus interest, and a proportionate share of attorneys’ and accountant’s fees.
The Marine Midland Bank, N. A., by reason of the foregoing, petitions the court for the following determinations:
(a) Should petitioner honor the demand for apportionment of taxes, interest, attorneys’ and accountant’s fees?
(b) If the court determines there should be apportionment, how should the apportionment be computed?
(c) If the court determines there should be apportionment, should the petitioner pay such amount directly to the Internal Revenue Service or to the executrix of the estate of Katheryn B. Edwards?
(d) If the court determines there should be apportionment, how should the apportioned share of each item be chargeable to income or principal?
The linchpin of this case is first to determine if apportionment of estate taxes applies. If apportionment does not apply, all other questions become moot.
As can be seen from the figures above, the question of apportionment is no passing fancy for the daughter who is the sole devisee under the will and only the lifetime beneficiary of the trust. If apportionment does not apply, her inheritance will shrink from $192,509 to $32,072, less attorneys’ fees and disbursements.
*705 The trust which will be included in the decedent’s estate for purposes of computing State and Federal death taxes contains no provision for payment of taxes. The decedent’s will does not mention the trust.
A brief background of the history of apportionment in New York might be helpful.
Prior to 1930, estate taxes were paid out of the residuary estate. This was a common-law presumption which in many cases found a friend or distant relative to fare better than those nearest to the decedent. In 1930, there was enacted a statute (Decedent’s Estate Law, § 124) requiring an equitable apportionment of all estate taxes. In 1940, section 124 of the Decedent’s Estate Law was amended to extend the right of the settlor of an inter vivos trust to stipulate against apportionment (L 1940, ch 829).
Section 124 of the Decedent’s Estate Law, as amended (it has been amended four times — 1940, 1950, 1964 and 1965), was re-enacted as EPTL 2-1.8.
EPTL 2-1.8 (subd [a]) is a statutory mandate to apportion taxes unless the testator “otherwise directs in his will, and except where by any instrument other than a will (hereinafter called a ‘non-testamentary instrument’) direction is given for apportionment within the fund of taxes assessed upon the specific fund dealt with in such non-testamentary instrument, shall be equitably apportioned among the persons interested in the gross tax estate”.
The will of the decedent in the case at bar is silent on the manner in which payment of taxes is to be made. The will does not touch the subject of apportionment between the personal estate of the decedent and the inter vivos trust.
Therefore, if the decedent had died a resident of New York, EPTL 2-1.8 (subd [a]) would apply and the taxes would be apportioned (see, also, US Code, tit 26, §§ 2206, 2207; Riggs v Del Drago, 317 US 95).
However, here we have the inter vivos trust in New York, the decedent a resident of the Country of Mexico, and the will probated in Texas. Do we apply New York, Mexican or Texas law as it relates to payment of estate taxes?
The courts of New York have adopted a rule which refers the question of apportionment of estate taxes to the law of *706 decedent’s domicile (Matter of Gato, 276 App Div 651, affd 301 NY 653; Central Hanover Bank & Trust Co. v Peabody, 190 Misc 66).
In these two cases, the application of the domiciliary law led to the apportionment of the taxes but the same conflicts rules apply where the domiciliary laws fail to require apportionment (Matter of Peabody, 115 NYS2d 337).
Therefore, the rule in New York is — when questions of apportionment of estate taxes arise in courts of a State of the situs of a trust whose assets are includable in decedent’s gross estate for tax purposes, the law of the situs refers to the law of decedent’s domicile to resolve the questions.
The problems now under consideration are raised by the distribution of the estate tax burden, which begins with multiple State property laws (New York; Morelos, Mexico; and Texas), passes through the single Federal tax law (US Code, tit 31, § 192), and then is returned to multiple State laws by the apportionment doctrine (55 Col L Rev 261).
Thus, we have a conflict of law problem that has been left to the States to unravel. The Federal Government, while looking for its taxes, has left a Pandora’s box for the estate attorneys to ponder over. The only legislation the Federal Government has sought fit to enact covering this apportionment problem covers apportionment of life insurance proceeds and property subject to powers of appointment (Riggs v Del Drago, 317 US 95, supra).
The domicile rule has been applied by New York to apportionment against inter vivos trusts no matter where the transfer has taken place.
This has been the view of the New York courts in cases involving New York trusts of both realty (Matter of Peabody, 115 NYS2d 337, supra), and personalty (Central Hanover Bank v Peabody, 190 Misc 66, supra), and they have adhered to their position even when to do so meant that no apportionment would result.
It should be noted, however, that the status of the New York rule beyond the lower courts is not entirely clear. The opinions have not attempted to discuss the reasons for or the scope of the domicile rule, and in some cases it has been *707 applied arbitrarily, without much consideration of the court’s power to do so (55 Col L Rev 281; Matter of Buck-man, 183 Misc 1).
With the above in mind, we now turn to the law of the domicile of the decedent, the Country of Mexico. What is the law of Mexico, legislative or judicial, as to the apportionment of estate taxes, if in fact there is any law regarding this issue?
If New York applies the law of the domicile of the testatrix, we now must look to the law of Mexico since it is undisputed the testatrix died a domiciliary of Mexico.
The attorney for the executrix retained attorney at law Francisco Rubi Becerril of Cuernavaca, Morelos, Mexico, professor at the School of Law and Social Sciences of the Autonomous University of the State of Morelos and former Civil Judge of the Superior Court of Cuernavaca, Morelos.
Mr. Becerril issued a lengthy opinion reciting the various articles of “The Civil Code of Mexico” which he deemed would require apportionment. It is agreed there is no estate tax levied in Mexico by the national government or the local government where the testatrix died a resident.
Mr. Becerril based his opinion on the fact that Mexican law would charge an heir who acquires property for any amounts levied for taxes and everyone would have to pay his or her pro rata share (Civil Code of Mexico, art 1284), and that equity would demand this result (arts 1396, 20, 1410, and 2058, supra).
In Matter of Owen (71 Misc 2d 179), a similar opinion was sought by the parties. Contradictory opinions of two Mexican attorneys were submitted. The court held these letters represent nothing but the mere opinion of the writer that a share of the tax was or was not collectible.
The Mexican attorney’s opinion argues that regardless of the New York law on apportionment, the law of Mexico would require the Mexican heirs to pay their pro rata share of the estate taxes; therefore, this required the apportionment of estate taxes levied in a foreign jurisdiction.
The State of Texas where the will was probated does not provide the court with any help. Texas has not adopted an apportionment statute as has New York. In Sinnott v *708 Gidney (159 Tex 366), the Texas Supreme Court held there was no apportionment of estate taxes attributable to probate assets. The court, however, expressly left open the question of apportionment of estate taxes where nontestamentary or nonprobate assets are included in the gross taxable estate. To compound the problem of following Texas law is the fact the assets of the estate located in Texas were minimal.
CPLR 4511 is concerned with judicial notice of law. Subdivision (b) of said section indicates that a court “may” take judicial notice of “the laws of foreign countries” and “shall” take notice of such foreign law “if a party requests it, furnishes the court sufficient information to enable it to comply with the request, and has given each adverse party notice of his intention to request it.”
Consequently, the court is not required to take judicial notice of the law of Mexico but “may” do so. Considering the circumstances of this case, the court declines to také judicial notice of the Mexican law. The court is reluctant to take upon itself the burden of determining what the law of Mexico is. To take judicial notice without certainty of what the law of Mexico is on the subject of apportionment may be an abuse of discretion (Amdur v Zim Israel Nav. Co., 310 F Supp 1033; Petrol Shipping Corp. v Kingdom of Greece, 37 FRD 437, affd 360 F2d 103, cert den 385 US 931).
In default of the proof of Mexican law, the court can look to New York law (Watts v Swiss Bank Corp., 27 NY2d 270; Gangel v DeGroot, 41 NY2d 840; Loebig v Larucci, 572 F2d 81; Matter of Crichton, 20 NY2d 124).
On the above analysis in the absence of proof of contrary applicable foreign law, the law of the forum should be applied (Ehrenzweig, Conflict of Laws, § 119, pp 341-342; CPLR 4511, subd [b]; Gangel v DeGroot, 41 NY2d 840, supra).
The forum is New York. The applicable law is EPTL 2-1.8 (subd [a]), which is a statutory mandate to apportion.
The court also finds that there would be no “manifest injustice” in not taking judicial notice of the Mexican law and instead applying New York law (Watts v Swiss Bank Corp., 27 NY2d 270, 276, supra). To the contrary, the apportionment of the tax is the more equitable result.
*709 The court finds that:
(a) The petitioner, Marine Midland Bank, N. A., shall apportion taxes and penalties, interest, attorneys’ fees and accountant’s fees (EPTL 2-1.8, subds [a], [h]).
(b) The apportionment shall be computed in accordance with EPTL 2-1.8 (subd [c], pars [1], [4]).
(c) The petitioner shall pay the apportioned amounts to the fiduciary of the estate charged with the duty to administer the estate jointly with the owed payee (EPTL 2-1.8, subd [f]).
(d) The apportioned taxes and penalties, interest, attorneys’ and accountant’s fees shall be payable out of principal of the inter vivos trust (EPTL 2-1.8, subds [b], [c], par [4]).