T.C. Memo. 1999-46


UNITED STATES TAX COURT


ESTATE OF HARRY FAGAN, JR., DECEASED, FIRST
CITIZENS BANK, EXECUTOR, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 4688-97.                    Filed February 16, 1999.


Maria M. Lynch, for petitioner.

Edwina L. Charlemagne, for respondent.


MEMORANDUM OPINION


COHEN, Chief Judge:  Respondent determined a deficiency in
the Federal estate tax of the estate of Harry Fagan, Jr., in the
amount of $84,899.  The issues for decision are:

(1) Whether the amount included in the gross estate as a bequest from Viola K. Fagan should be increased to restore amounts incurred for administrative expenses of her estate; and

(2) whether the amount of the charitable deduction should be reduced by Federal estate and State inheritance taxes.

This case was submitted fully stipulated pursuant to Rule 122. Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The stipulated facts are incorporated herein by this reference. Harry Fagan, Jr. (decedent), died on May 3, 1993, a resident of Wake County, North Carolina. The executor of decedent's estate is First Citizens Bank, the principal office of which was located in Raleigh, North Carolina, at the time of the filing of the petition.

Issue 1. Bequest From Viola K. Fagan

Background

Decedent was predeceased by his mother, Viola K. Fagan (Mrs. Fagan), who died on March 5, 1992, a resident of North Carolina. A portion of her estate passed to decedent under her will. Pertinent excerpts from Mrs. Fagan's will are as follows:

ARTICLE I

I desire and direct that all my just debts be paid without unnecessary delay by my Co-Executors, hereinafter named and appointed.

## ARTICLE II

I direct that all federal estate taxes and all costs of administration be paid from the residuary portion of my estate, * * * in order that that portion of my estate passing to my son, Harry Fagan, Jr. under Article III of this Will, will not be diminished because of the payment of federal estate taxes. I further direct that all state inheritance taxes be assessed against the receiving beneficiary.

## ARTICLE III

I give and bequeath to my son, Harry Fagan, Jr., one-half of my gross estate. This bequest is not to be diminished because of any federal estate taxes which are assessed against my estate, but my son is responsible for the payment of his state inheritance taxes from his share.

* * * * * * *

## ARTICLE XV

All the rest and residue of my property, after the payment of federal estate taxes, shall be divided into two equal shares [one share was to be paid to a granddaughter and one share was to be held in trust for a grandson]. * * *

In calculating the amount of Mrs. Fagan's bequest to decedent as reported on her Federal estate tax return, the executor of Mrs. Fagan's estate subtracted administrative expenses ($209,186) and debts ($11,765) from her gross estate ($4,875,844) and then multiplied the remaining amount by one-half, for a result of $2,327,447. Respondent determined that the amount included in decedent's gross estate as the bequest from Mrs. Fagan's estate should be increased by $104,593 (half of the total administrative expenses) on the ground that such expenses

should not have been deducted in determining the value of the bequest. The parties do not dispute the subtraction of the debts from Mrs. Fagan's gross estate before determining decedent's one-half share.

Discussion

Generally, the value of the gross estate of a decedent includes the value of all of the decedent's property, real or personal, tangible or intangible, wherever situated, to the extent of the decedent's interest therein at the time of death. Secs. 2031(a), 2033. State law determines property interests. Morgan v. Commissioner, 309 U.S. 78 (1940). Thus, our decision on this issue involves a determination of decedent's property rights under Mrs. Fagan's will pursuant to the laws of the State of North Carolina.

Where the terms of a will are not clear, unequivocal, and unambiguous, it is the responsibility of the courts to interpret the will. Pittman v. Thomas, 307 N.C. 485, 492, 299 S.E.2d 207, 211 (1983). Under North Carolina law, "'the intention of the testator is the polar star which is to guide in the interpretation of all wills, and, when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy.'" Id. (quoting Clark v. Connor, 253 N.C. 515, 520-521, 117 S.E.2d 465, 468 (1960)). In determining a testator's intent, the will is to be considered as a whole and in light of the circumstances at the time the will was made. Id. Where possible, effect is to be given to every clause, phrase,

and word.  Coppedge v. Coppedge, 234 N.C. 173, 176, 66 S.E.2d 777, 779 (1951).  Technical words are presumed to have been used in their technical sense unless the other language of the will evidences a contrary intent, in which case the words will be given their ordinary and popular meaning.  Kale v. Forrest, 278 N.C. 1, 6, 178 S.E.2d 622, 625 (1971).  "[T]he use of particular words, clauses or sentences must yield to the purpose and intent of the testator as found in the whole will."  Id.

Petitioner argues that Mrs. Fagan's will is ambiguous in that Article II states that the payment of both administrative costs and Federal estate taxes is to come from the residue, but that the purpose is to not diminish her son's bequest by Federal estate taxes.  It is petitioner's position that Mrs. Fagan's intent was to relieve her son's share only of Federal estate taxes.  Petitioner also points to the second sentence in Article III, which reads:  "This bequest is not to be diminished because of any federal estate taxes", as exonerating the bequest to decedent only from Federal estate tax.  In addition, petitioner argues that Mrs. Fagan did not intend the term "gross estate" in Article III in a technical sense but in the sense opposite to that of "net estate"; in other words, meaning "not reduced by federal estate tax".  On the basis of the foregoing, petitioner maintains that decedent's share of Mrs. Fagan's estate should be reduced by one-half of the administrative expenses of that estate.

Respondent's position is that the term "gross estate" was meant in the technical sense used for Federal estate tax purposes and that Mrs. Fagan intended for decedent to receive one-half of all of the property in which she had an interest at the time of her death. The only diminution was that resulting from the instruction in Article I to pay her debts. Respondent points to Article II as clearly stating Mrs. Fagan's intent that her son's share not be decreased by either the Federal estate tax or the administrative costs, in that she instructed that those items be paid from the residuary estate, and his portion was a specific bequest, not part of the residue.

Petitioner's interpretation of Mrs. Fagan's will would render void her direction that "all costs of administration be paid from the residuary portion of my estate". Paying the costs out of the residue does not contradict or interfere with the purpose of not diminishing decedent's share by Federal estate taxes. Paying such costs out of the residue gives effect to the first sentence of Article II and of Article III. Although, under this construction, the term "gross estate" does not totally coincide with the term as used on the Federal estate tax return, to wit, assets before deduction of debts, charging administrative costs to the residue is more consistent with that meaning. Moreover, no language in Mrs. Fagan's will expresses an intent contrary to the use of "gross estate" as a technical term.

The final clause in the first sentence of Article II, referring only to estate taxes, and similar limiting language in

Article III merely reflect that, absent any reference to Federal estate taxes, the burden of such taxes would have been allocated to all the legatees, including decedent, under the apportionment provision of chapter 28A, article 27, of the General Statutes of North Carolina (1997). Specific language preventing this consequence with respect to administrative costs was unnecessary because there is no provision of North Carolina law apportioning such costs.

We sustain respondent's position on this issue.

Issue 2. Decedent's Charitable Bequests

Background

On June 17, 1988, decedent executed a will and a trust agreement. The trust agreement was between decedent as grantor and First Citizens Bank as trustee. Decedent also named First Citizens Bank as executor of his will. In decedent's will, he left his automobile to his son and the rest of his tangible personal property to his daughter. Decedent made no other specific bequests and left the residue of his estate to the trust.

Decedent's will contains the following pertinent provisions:

ARTICLE I

DIRECTIONS TO EXECUTOR

1.01    Claims against My Estate. I direct my Executor, hereinafter named, to pay out of the general funds of my estate the cost of the administration of my estate, all my legal debts, expenses of last illness, and funeral expenses.

1.02    Payment of Taxes. I direct my Executor to pay out of my residuary estate, otherwise passing

under Article III hereof, and as soon as practical, all inheritance, estate, transfer, and succession taxes payable by reason of my death (including interest and penalties thereon in the discretion of my Executor) assessed on my property or interest included in my gross estate for tax purposes.  I direct that my Executor shall not require that any part of such taxes by [sic] recovered from, paid by, or apportioned among the recipients of, or those interested in, such property.

\* \* \* \* \* \* \*

## ARTICLE III

## DISPOSITION OF RESIDUARY ESTATE

All the rest, residue and remainder of my property, real and personal, tangible and intangible, wheresoever situate and howsoever held, including any property over which I may have a power of appointment, herein referred to as my residuary estate, I give, devise, and bequeath to First-Citizens Bank & Trust Company, as Trustee under that certain Trust Agreement dated the 17th day of June, 1988, wherein I am the Grantor and First-Citizens Bank & Trust Company is Trustee, to be held and administered as a part of the trust hereby [sic] created.

\* \* \* \* \* \* \*

## ARTICLE V

## ADMINISTRATIVE PROVISIONS

\* \* \* \* \* \* \*

5.02    <u>Payments By Trustee to Executor</u>.  Under that Trust Agreement referred to in Article III above, I provided that the Trustee thereunder shall pay to my Executor certain amounts as required by my Executor for payment of debts, funeral expenses, costs of administration of my estate and the inheritance and estate taxes payable upon my estate by reason of my death.  I expressly authorize and empower my Executor to request from time to time, in writing from said Trustee, the required amounts for payment of such debts, expenses and taxes.

The trust agreement established a trust of the proceeds of certain life insurance policies on the life of decedent to be received by the trustee as beneficiary, plus other property received by the trustee from decedent or third parties. The trust was revocable by decedent, who also reserved the right to receive the income and such portions of principal as decedent requested.

Article IV of the trust agreement provides for the disposition of the trust estate remaining at the time of decedent's death, including property devised or bequeathed under decedent's will, by dividing the remaining estate into three shares designated as shares A, B, and C. Shares A and B, each equal to one-fifth of the trust estate, were to be placed in trust for decedent's daughter and son, respectively. Share C, constituting three-fifths of the trust estate, was to be distributed one-fourth to each of four charitable organizations. The trust agreement provided "that the portions disposed of under Share C shall not be reduced by any taxes chargeable against the Grantor's gross estate."

In addition, Article V of the trust agreement provides:

> 5.02 <u>Use of Trust Funds to Pay Estate Debts</u>.
> The Trustee shall pay to the Executor or Administrator
> of the estate of the Grantor from the principal of the
> trust of Shares A and B, such sum or sums as such
> Executor or Administrator certified to be necessary to
> discharge the liability of the estate of the Grantor
> for all inheritance, legacy, succession or estate taxes
> due from or assessed against the estate of the Grantor,
> and such further sum or sums as the Executor or
> Administrator may certify to the Trustee as being

required in order to pay the debts of the Grantor, his funeral expenses, cost of Grantor's last illness and any other expenses of the administration of his estate.

On decedent's Federal estate tax return, the executor reported a gross estate of $5,037,386. The value of the assets contained in the trust and included in the gross estate was stated as $2,417,846. Stocks and bonds owned by decedent were reported at a value of $1,550,615. The gross estate included $242,301 in proceeds from life insurance policies on decedent's life, owned by and payable to the trust as beneficiary. The trust was also the beneficiary of annuities totaling at least $300,000. Additionally, the estate reported real estate, mortgages, notes, bank accounts, and other miscellaneous assets valued at more than $500,000. The executor reported four charitable bequests totaling $2,929,683, three-fifths of the estate's residue. No taxes were listed as being payable out of this property. The estate reported and paid a tax of $166,818.

Respondent determined that the total amount of the charitable bequests should be reduced by $150,142 for a portion of the estate's Federal and State taxes. On brief, respondent concedes that, due to a mathematical error, the adjustment should have been only $147,791.

Discussion

Section 2055(a) allows a deduction from the value of the gross estate for the value of charitable bequests. Section 2055(c) provides that, if the Federal estate tax,

or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this section, then the amount deductible under this section shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes.

"Section 2055(c) in effect provides that the deduction is based on the amount actually available for charitable uses, that is, the amount of the fund remaining after the payment of all death taxes."  Sec. 20.2055-3, Estate Tax Regs.

Generally, "Congress intended that the federal estate tax should be paid out of the estate as a whole, and that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax".  Riggs v. Del Drago, 317 U.S. 95, 97-98 (1942).  In limited situations, Congress has specified where the estate tax burden would fall.  See secs. 2206 (life insurance), 2207 (powers of appointment), 2207A (marital deduction property), and 2207B (reserved life estate).  These situations deal with property that does not pass through the executor's hands in administering the estate.  See Riggs v. Del Drago, supra at 102.  Section 2206 provides in part:

Unless the decedent directs otherwise in his will, if any part of the gross estate on which tax has been paid consists of proceeds of policies of insurance on the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the

total tax paid as the proceeds of such policies bear to the taxable estate. * * *  [Fn. ref. omitted.]

Chapter 28A, article 27, of the General Statutes of North Carolina is entitled "Apportionment of Federal Estate Tax."  N.C. Gen. Stat. sec. 28A-27-2 provides in part:

(a) Except as otherwise provided in subsection (b) of this section, or * * * [computational statutes] the tax shall be apportioned among all persons interested in the estate in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate.  The values as finally determined for federal estate tax purposes shall be used for the purposes of this computation.

(b) <u>In the event the decedent's will provides a method of apportionment of the tax different from the method provided in subsection (a) above, the method described in the will shall control</u>. * * *  [Emphasis added.]

The section then provides for exceptions not applicable to the instant case.

N.C. Gen. Stat. sec. 28A-27-5(a) provides in part:

(a) Any interest for which a deduction or exemption is allowed under the federal revenue laws in determining the value of the decedent's net taxable estate, such as * * * gifts or bequests for charitable, public, or similar purposes shall not be included in the computation provided for in G.S. 28A-27-2 to the extent of the allowable deduction or exemption. * * *

Petitioner's position is that decedent's charitable bequests should not be reduced by any taxes.  Petitioner argues that decedent's intent to pass the bulk of his estate to charity free of tax is clear from reading the provisions of the will and trust together.  Alternatively, petitioner argues, if one looks only to the will, decedent's instructions as to apportionment within the

residue are ambiguous and, therefore, the North Carolina apportionment statute applies to the apportionment of the taxes within the residue, causing the charitable portion to be exempt from apportionment.

Respondent's position is that decedent clearly instructed in his will that all taxes payable by reason of his death be paid from the residuary estate, without apportionment, prior to its distribution to the trust as residuary beneficiary, and that, because of that clear instruction, apportionment as provided in the North Carolina statutes is avoided. Respondent argues that the provision in the trust regarding apportionment to the noncharitable trust beneficiaries applies only to those taxes required to be paid from trust assets; that is, if the residuary portion of the estate were insufficient to pay all debts, expenses, and taxes.

We agree with respondent. Decedent's instructions were clear as to where the burden of the taxes should fall. Paragraph 1.02 of his will provided that all taxes payable by reason of his death on his property or interest included in his gross estate were payable from the residuary portion of his estate. He also expressly provided that there be no apportionment among the recipients of, or those interested in, such property. Because of decedent's instructions in his will on this subject, neither section 2206 nor the method of apportionment found in chapter

28A, article 27, of the General Statutes of North Carolina applies to the apportionment of the Federal estate tax.

Petitioner's position seeks to import into the will the apportionment provision of a separate document, namely, the trust agreement, in order to determine how decedent's residuary estate should be distributed. See generally Shoup v. American Trust Co., 245 N.C. 682, 97 S.E.2d 111, 115 (1957) (as a general rule the construction of a will is not to be influenced by provisions of other nontestamentary documents). Petitioner ignores the distinction between determining how an estate is to be divided and how the burden of taxes is allocated. The apportionment clause in the trust agreement deals with an allocation of the tax burden on property that the beneficiaries of the trust are entitled to receive from the trust, not what the trust is entitled to receive from the grantor-decedent's estate.

Accordingly, we hold that the amount of decedent's deductions for charitable bequests is to be reduced by the amount of Federal estate and State inheritance taxes.

In accordance with the parties' concessions and the above holdings,

Decision will be entered under Rule 155.