T.C. Memo. 2002-238

UNITED STATES TAX COURT

ESTATE OF MARION P. BRADFORD, DECEASED,
LIZETTE L. PRYOR, EXECUTRIX, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4659-00.      Filed September 23, 2002.

<u>Shaun A. Ingersoll</u>, for petitioner.

<u>Edwina L. Charlemagne</u>, for respondent.

MEMORANDUM OPINION

WHALEN, <u>Judge</u>:  Respondent determined a deficiency
of $294,712.16 and an addition to tax under section
6651(a)(1) of $14,736 in the Federal estate tax of the
Estate of Marion P. Bradford, Deceased.  Hereinafter we
refer to Marion P. Bradford as the decedent.  After
concessions, the sole issue for redetermination is the
amount of the charitable deduction under section 2055(a) of

the Internal Revenue Code (hereinafter all section references are to the Internal Revenue Code as in effect on the date of the decedent's death). Resolution of this issue depends upon whether the Federal estate and State inheritance taxes attributable to the decedent's death are to be apportioned to the estate's charitable beneficiary, thereby reducing, pursuant to section 2055(c), the amount of the charitable deduction claimed on the subject estate tax return, and whether the Federal estate and State inheritance taxes paid by the decedent's inter vivos trust reduce the amount of the charitable bequest and, thus, also reduce the amount of the charitable deduction.

## Background

The parties filed this case without trial under Rule 122 of the Tax Court Rules of Practice and Procedure (hereinafter all Rule references are to the Tax Court Rules of Practice and Procedure). The stipulation of facts and the accompanying exhibits filed by the parties are hereby incorporated in this opinion.

The decedent died testate on April 3, 1996, in Raleigh, North Carolina. He was 86 years of age at the time. A friend and caregiver of the decedent, Ms. Lizette L. Pryor, was duly appointed executrix of the decedent's

estate.  At the time the instant petition was filed, the executrix resided in Raleigh, North Carolina.

On March 21, 1996, less than 1 month before he died, the decedent had executed his last will and testament. After making provision for the payment of the decedent's debts, expenses, and death taxes, the decedent's will made bequests of certain personal property to his sister, Ms. Claudia Bradford Stach, and to Ms. Pryor, and it directed that the rest, residue, and remainder of the decedent's property be given to Ms. Pryor as successor trustee under a revocable living trust that the decedent created contemporaneously with the execution of his will.

The decedent's will provides for the payment of his debts, expenses, and death taxes in the following provision:

ARTICLE I
DIRECTIONS TO EXECUTOR

1.01  PAYMENT OF DEBTS AND EXPENSES.  All my legal debts, health care expenses, funeral expenses and the administration expenses of my estate, shall be paid out of my Residuary Estate. I authorize my Executor, in its discretion, to spend more than is otherwise allowed by law for a suitable gravestone and for perpetual care of the lot upon which my grave is located.  It is my desire that I be buried in my family plot in Willow Dale Cemetery in Goldsboro, North Carolina.

1.02  PAYMENT OF DEATH TAXES.  All death taxes (other than death taxes which are paid

- 4 -

from property passing outside of this Will pursuant to the terms of the governing instrument) shall be paid out of my Residuary Estate as an administration expense and shall not be charged against or recovered from any recipient or beneficiary of the property taxed, except that my Executor shall recover as provided by law any death tax attributable to property over which I have a power of appointment or in which I have qualifying income interest for life to the extent that any death tax recoverable by law is not otherwise paid out of such property.

1.03  PAYMENT OF DEBTS, EXPENSES AND DEATH TAXES OUT OF TRUST IF RESIDUARY ESTATE INSUFFICIENT.  If my Residuary Estate is insufficient, either in whole or in part, to pay all of my legal debts, health care expenses, funeral expenses, the administration expenses of my estate and the death taxes payable out of my Residuary Estate, my Executor shall certify to the Trustee acting under the Trust Agreement referred to in Article III, the amount of the insufficiency, which amount shall be paid out of the property of the trust as provided in that instrument.

The decedent's will defines the term "death taxes" as

follows:

ARTICLE X
DEFINITIONS

*    *    *    *    *    *    *

10.02  "DEATH TAXES."  The term "death taxes" means inheritance, estate, supplemental estate, generation-skipping, transfer and succession taxes, and any interest and penalties on these taxes, imposed by reason of my death by any jurisdiction with respect to property passing under or outside of the provisions of this Will or any codicil to it which is includible in my estate for the purpose of determining such tax, including, but not limited to, any tax on property includible under section 2041 (relating to life insurance proceeds), section 2042

(relating to powers of appointment), or section 2044 (relating to qualified terminable interest property) of the Internal Revenue Code, or any comparable provision of state law, but excluding, however, any tax imposed by section 2032A(c) (relating to qualified real property) or chapter 13 (relating to generation-skipping transfers) of the Internal Revenue Code, or any comparable provision of state law, for which my estate is not liable.

The decedent's will provides for the disposition of the decedent's residuary estate in the following provision:

ARTICLE III

DISPOSITION OF RESIDUARY ESTATE.  All the rest, residue, and remainder of my property, real and personal, tangible and intangible, wheresoever situate and howsoever held, including any property over which I may have a power of appointment, herein referred to as my Residuary Estate, I give, devise and bequeath to LIZETTE LEWIS PRYOR, as successor Trustee under that Revocable Living Trust Agreement dated the 21st day of March, 1996, wherein I am the original Grantor and original Trustee, and as the same may from time to time be amended, to be held and administered as a part of the Trust Fund therein created as though it had originally been a part thereof.

The trust agreement referred to above in article III of the decedent's will is the revocable living trust agreement, mentioned above, that the decedent executed contemporaneously with his will.  Under the trust agreement, the name of the trust is the Marion Peacock Bradford Revocable Living Trust (the trust).  In the trust

agreement, the decedent designated himself as the original trustee, and he made provision for the appointment of Ms. Pryor as successor trustee upon his death.

The trust agreement provides for the distribution of the trust property in the following provision:

Article V

DISTRIBUTION OF TRUST ON GRANTOR'S DEATH

5.01 PAYMENT OF DEBTS AND EXPENSES. Upon the death of Grantor, the Successor Trustee shall pay Grantor's just debts, expenses of last illness, and burial expense, to the extent that these items shall not be paid or the responsibility for their payment be assumed by some other person or estate, except that the Successor Trustee, in its discretion, shall not be required to pay and discharge, both as to principal and interest, any valid lien, mortgage, or charge against any real property, including buildings and improvements, but may elect to treat such as a continuing debt.

5.02 DISTRIBUTION OF PERSONAL PROPERTY TO CLAUDIA BRADFORD STACH. Upon the death of Grantor, the Successor Trustee shall distribute to grantor's sister, CLAUDIA BRADFORD STACH, if she survives Grantor, Grantor's two diamond rings if such rings have not previously been distributed. In the event CLAUDIA BRADFORD STACH predeceases Grantor, then the Successor Trustee shall distribute such two diamond rings to LIZETTE LEWIS PRYOR.

5.03 CREATION OF CHARITABLE FOUNDATION. Upon the death of the Grantor, the Successor Trustee shall allocate one half of the remaining Trust assets or property for the establishment of a private charitable foundation for the benefit of the church at which LIZETTE LEWIS PRYOR attends and is a member as of the date of Grantor's death. Such private charitable

foundation shall be established for a period of five (5) years, and upon the fifth anniversary date of the date of Grantor's death, the remaining proceeds plus any interest accumulated within the private charitable foundation established pursuant to this paragraph shall be distributed in fee to the charitable organization for which this private charitable foundation is initially established.  The Foundation Trustee or manager of the private charitable foundation established pursuant to this paragraph shall be LIZETTE LEWIS PRYOR.

* * * * * * *

It is Grantor's intent that such Foundation Trustee or manager have the authority and discretion to distribute proceeds from the private charitable foundation as he or she see [sic] fit for specific charitable events, project [sic], or needs of the charitable organization for which the private charitable foundation was established.  Thus, during the five (5) year term of the private charitable foundation and upon its termination as described in this paragraph, the Foundation Trustee or manager may allocate foundation funds to the designated charitable organization for specific needs or for the general benefit of the charitable organization at his or her discretion provided that all funds are disbursed to such charity upon the foundation's termination.

5.04  ALLOCATION OF REMAINING TRUST PROPERTY.  Upon the death of the Grantor, the Successor Trustee shall distribute the remaining Trust property which remains after providing for all previous distributions and for payment of all expenses of administering such Trust in accordance with provisions of paragraph 6.02 herein for bequests, debts, expenses, and taxes of Grantor's estate to LIZETTE LEWIS PRYOR in fee, discharged of Trust if she survives Grantor.
* * *

Thus, according to paragraph 5.03 of article V of the trust agreement, the successor trustee is directed to "allocate one half of the remaining Trust assets or property for the establishment of a private charitable foundation for the benefit of the church at which LIZETTE LEWIS PRYOR attends and is a member as of the date of Grantor's death." The church referred to in that provision is the Millbrook United Methodist Church. The private charitable foundation is to be established for a period of 5 years, and the remaining proceeds held by the charitable foundation and any accumulated interest are to be distributed in fee to the Millbrook Methodist Church 5 years after the decedent's death.

According to paragraph 5.04 of article V, the successor trustee is directed to make a distribution to the other beneficiary of the trust, Ms. Pryor, "Upon the death of the Grantor". The trust agreement describes the amount of this immediate distribution to Ms. Pryor as "the remaining Trust property which remains after providing for all previous distributions and for payment of all expenses of administering such Trust in accordance with provisions of paragraph 6.02 herein for bequests, debts, expenses, and taxes of Grantor's estate".

The trust agreement provides for the payment of bequests, debts, expenses, and taxes of the decedent's estate in the following provision:

Article VI

TRUSTEE'S POWERS

\* \* \* \* \* \* \*

6.02 PAYMENT OF BEQUESTS, DEBTS, EXPENSES AND TAXES OF GRANTOR'S ESTATE. Notwithstanding the directions previously given as to the disposition of the Trust after the Grantor's death:

\* \* \* \* \* \* \*

B. PAYMENT OF BEQUESTS, DEBTS, EXPENSES AND TAXES CERTIFIED BY PERSONAL REPRESENTATIVE OF GRANTOR'S ESTATE. The Successor Trustee shall pay those amounts to Grantor's estate or to the persons or authorities eligible to receive the same which are certified by the personal representative of Grantor's estate as being required to pay (i) any bequest in Grantor's Last Will, (ii) any of Grantor's debts, health care expenses, funeral expenses and administration expenses of Grantor's estate, except that the Successor Trustee, in its discretion, may decline to pay any of Grantor's debts or expenses from life insurance proceeds which are exempt from creditors' claims, and (iii) any death taxes imposed by reason of Grantor's death, including any inheritance, estate, supplemental estate, generation-skipping, transfer or succession taxes and any interest and penalties payable in connection with such taxes. Such amounts shall be paid first from the Trust property which is subject to allocation under Article V.

The trust was funded before decedent's death with real property and stocks and bonds.  On the date of death, the assets owned by the trust were valued at $1,711,294.

On the date of the decedent's death, the decedent's gross estate totaled $3,057,009 and consisted of the following assets:

| Asset | Value |
|---|---|
| Real estate | $148,500 |
| Stocks and bonds | 2,149,394 |
| Mortgages, notes and cash | 200,943 |
| Ins. on the decedent's life | 25,720 |
| Jointly owned property | 519,141 |
| Other misc. property | 13,311 |
| Total | 3,057,009 |

The decedent's nonprobate estate property, that is, the property passing outside of the will, consisted of the following:

| Asset | Value |
|---|---|
| Revocable living trust property | $1,711,294 |
| Jointly owned property | 519,141 |
| Ins. on the decedent's life | 25,720 |
| Total | 2,256,155 |

The decedent's probate estate consisted of the following property:

| Asset | Value |
|---|---|
| 5422.033 shares of Eli Lilly | $356,160 |
| 3400 shares of Eli Lilly | 223,338 |
| Merrill Lynch CMA account | 200,943 |
| 189.99 shares RJR | 5,867 |
| Rings & misc. household items | 6,500 |
| Intangibles tax refunds | 6,811 |
| 22 shares Ameritech | 1,225 |
| Exdividend | 10 |
| Total | 800,854 |

The decedent's estate filed a Form 706, United States Estate (and Generation-Skipping transfer) Tax Return, on February 3, 1997, approximately 1 month after the due date of the return.  It paid estate tax of $254,051, the net estate tax reported on the return.  Among other deductions, the return claimed a charitable deduction for a gift or bequest of $1,346,060 to the Millbrook United Methodist Church.

On or about July 22, 1997, the estate filed an amended Form 706 that reported net estate tax of $239,165. The amended return reflected reductions in the fair market value of the real estate and stocks and bonds reported on the original return.  It also reduced the charitable deduction claimed.  Set out below is a schedule that compares the assets and deductions reported on the original and amended estate tax returns:

| Recapitulation | Original return | Amended return | Difference |
|---|---|---|---|
| Real estate | $199,400 | $148,500 | $50,900 |
| Stocks and bonds | 1,827,042 | 1,796,600 | 30,442 |
| Mortgages, notes, and cash | 200,943 | 200,943 | -0- |
| Ins. on the decedent's life | 25,720 | 25,720 | -0- |
| Jointly owned property | 519,141 | 519,141 | -0- |
| Other misc. property | 6,500 | 6,500 | -0- |
| Transfers during the decedent's life | -0- | -0- | -0- |
| Appointment | -0- | -0- | -0- |
| Annuities | -0- | -0- | -0- |
| Total gross estate | 2,778,746 | 2,697,404 | 81,342 |
| Funeral expenses | $48,506 | 48,506 | -0- |
| Debts of the decedent | 5,899 | 5,899 | -0- |
| Mortgages and liens | -0- | -0- | -0- |
| Total | 54,405 | 54,405 | -0- |
| Allowable amount | 54,405 | 54,405 | -0- |
| Net losses during admin. | -0- | -0- | -0- |
| Expenses incurred in administering property | -0- | -0- | -0- |
| Bequests, etc. to surviving spouse | -0- | -0- | -0- |
| Charitable, public, and similar gifts and bequests | 1,346,060 | 1,305,390 | 40,670 |
| Total allowable deductions | 1,400,465 | 1,359,795 | 40,670 |

The manner in which the estate computed the charitable deduction claimed on the original estate tax return and on the amended return is as follows:

| Computation of charitable deductions | Original return | Amended return |
|---|---|---|
| Gross estate | $2,778,746 | $2,697,404 |
| Less: | | |
| Funeral expenses | 48,506 | 48,506 |
| Debts per return | 5,899 | 5,899 |
| Ins. on the decedent's life | 25,720 | 25,720 |
| Bequest of rings to sister | 6,000 | 6,000 |
| Bequest of household goods to Ms. Pryor | 500 | 500 |
| | 86,625 | 86,625 |
| Net assets available for distribution | 2,692,121 | 2,610,779 |
| Charitable deduction (1/2 of net assets available) | 1,346,061 | 1,305,390 |

In passing, we note that the net assets available for distribution, as computed above, include jointly owned property valued at $519,141 that was not available for distribution as part of the charitable bequest.

Respondent issued a notice of deficiency to the estate.  The adjustments to the original estate tax return that respondent determined in the notice are summarized in the following schedule:

| Recapitulation | Original return | Notice | Difference |
|---|---|---|---|
| Real estate | $199,400 | $148,500 | ($50,900) |
| Stocks & bonds | 1,827,042 | 2,149,394 | 322,352 |
| Mortgages, notes & cash | 200,943 | 200,943 | -0- |
| Ins. on the decedent's life | 25,720 | 25,720 | -0- |
| Jointly owned property | 519,141 | 519,141 | -0- |
| Other misc. property | 6,500 | 13,311 | 6,811 |
| Transfers during the decedent's life | -0- | -0- | -0- |
| Appointment | -0- | -0- | -0- |
| Annuities | -0- | -0- | -0- |
| Total gross estate | 2,778,746 | 3,057,009 | 278,263 |
| Funeral expenses | 48,506 | 87,506 | 39,000 |
| Debts of the decedent | 5,899 | 23,475 | 17,576 |
| Mortgages & liens | -0- | -0- | -0- |
| Total | 54,405 | 110,981 | 56,576 |
| Allowable amount | 54,405 | 110,981 | 56,576 |
| Net losses during admin. | -0- | -0- | -0- |
| Expenses incurred in administering property | -0- | -0- | -0- |
| Bequests, etc. to surviving spouse | -0- | -0- | -0- |
| Charitable, public & similar gifts & bequests | 1,346,060 | 800,752 | (545,308) |
| Total allowable deductions | 1,400,465 | 911,733 | (488,732) |

Respondent's adjustment to the charitable deduction claimed

on the decedent's original estate tax return is described

in the notice as follows:

It is determined that you are entitled to
a deduction of $800,752 as a charitable
contribution deduction rather than the
amount of $1,346,060 as shown on your return.
Accordingly the taxable estate has been
adjusted by  $545,308, computed as shown below:

| | | |
|---|---|---|
| Item #1 Foundation | $1,346,060 | $800,752 |
| Net Increase (Decrease) | (545,308) | |
| | $ 800,752 | $800,752 |

The manner in which respondent computed the charitable

deduction, $800,752, is set forth in the following

schedule:

| Recapitulation | Gross estate | Nonprobate | Probate |
|---|---|---|---|
| Real estate | $148,500 | $148,500 | -0- |
| Stocks & bonds | 2,149,394 | 1,562,794 | 586,600 |
| Mortgages, notes & cash | 200,943 | -0- | 200,943 |
| Ins. on the decedent's life | 25,720 | 25,720 | -0- |
| Jointly owned property | 519,141 | 519,141 | -0- |
| Other misc. property | 13,311 | -0- | 13,311 |
| Gross estate | 3,057,009 | 2,256,155 | 800,854 |
| Funeral expenses | 48,506 | -0- | 48,506 |
| Additional admin. expenses | 39,000 | -0- | 39,000 |
| Debts per return | 5,899 | -0- | 5,899 |
| Additional debts, unpaid income taxes | 17,576 | -0- | 17,576 |
| Federal estate tax | 548,763 | -0- | 548,763 |
| State death taxes | 244,401 | -0- | 244,401 |
| Ins. on the decedent's life | 25,720 | -0- | -0- |
| Bequest of rings to sister | 6,000 | -0- | 6,000 |
| Bequest of household goods to executor | 500 | -0- | 500 |
| Total deductions | 936,365 | -0- | 910,645 |
| Net probate residue | | | (109,791) |
| Trust assets | | | 1,711,294 |
| Net assets available for distribution | | | 1,601,503 |
| Charitable deduction (1/2 of net assets available) | | | 800,752 |

It is apparent that the principal difference between respondent's computation of the allowable charitable deduction and the estate's computation is that respondent computed the charitable deduction after Federal estate tax (viz, $548,763), State death taxes (viz, $244,401), and additional debts (viz, $17,576) were deducted from the assets available for distribution, whereas the estate computed the charitable deduction before these amounts were deducted.

## Discussion

Generally, in computing the estate tax imposed by section 2001, section 2055(a) allows the amount of all bequests, legacies, devises, or transfers to or for the use of any corporation organized and operated exclusively for religious or charitable purposes to be deducted from the value of the decedent's gross estate.  Respondent does not question the fact that a bequest or gift to Millbrook United Methodist Church is eligible to be deducted under section 2055(a).  Only the amount of the deduction is at issue in this case.

If the tax imposed by section 2001 or any inheritance tax is payable out of the charitable bequests, then section 2055(c) limits the amount of the deduction to the amount of such bequests reduced by the amount of the taxes.  Section 2055(c) provides as follows:

> SEC. 2055(c) Death Taxes Payable Out of Bequests.--If the tax imposed by section 2001, or any estate, succession, legacy, or inheritance taxes, are, either by the terms of the will, by the law of the jurisdiction under which the estate is administered, or by the law of the jurisdiction imposing the particular tax, payable in whole or in part out of the bequests, legacies, or devises otherwise deductible under this section, then the amount deductible under this section shall be the amount of such bequests, legacies, or devises reduced by the amount of such taxes.

In effect, section 2055(c) provides that the charitable deduction under section 2055(a) is based upon the amount actually available for charitable uses; that is, the amount of the funds remaining after the payment of all death taxes. See sec. 20.2055-3(a)(1), Estate Tax Regs. If section 2055(c) applies, an interrelated calculation is required to determine the amount of the allowable charitable deduction. See sec. 20.2055-3(a)(2), Estate Tax Regs.

Generally, the manner in which death taxes are apportioned to the assets that compose a decedent's gross estate is governed by State law. See Riggs v. Del Drago, 317 U.S. 95, 97-98 (1942); Estate of Leach v. Commissioner, 82 T.C. 952, 963 (1984), affd. without published opinion 782 F.2d 179 (11th Cir. 1986); Estate of Fagan v. Commissioner, T.C. Memo. 1999-46; Estate of McKay v. Commissioner, T.C. Memo. 1994-362. In this case, the decedent was a resident of North Carolina at the time of his death, and we look to North Carolina law to determine the manner in which death taxes are apportioned to the decedent's estate and, specifically, to determine whether death taxes are apportioned to the charitable bequest made by the decedent. Estate of Fagan v. Commissioner, supra.

The North Carolina apportionment statute, chapter 28A, article 27, of the General Statutes of North Carolina, N.C. Gen. Stat. sec. 28A-27-2 (2001), provides as follows:

Section 28A-27-2. Apportionment.

(a) Except as otherwise provided in subsection (b) of this section, or in G.S. 28A-27-5, * * * the tax shall be apportioned among all persons interested in the estate in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values as finally determined for federal estate tax purposes shall be used for the purposes of this computation.

(b) In the event the decedent's will provides a method of apportionment of the tax different from the method provided in subsection (a) above, the method described in the will shall control. However, in the case of any will executed on or after October 1, 1986, a general direction in the will that taxes shall not be apportioned, whether or not referring to this Article, but shall be paid from the residuary portion of the estate shall not, unless specifically stated otherwise, apply to taxes imposed on assets which are includible in the valuation of the decedent's gross estate for federal estate tax purposes only by reason of Sections 2041, 2042 or 2044 of the Internal Revenue Code of 1954 or corresponding provisions of any subsequent tax law. In the case of an estate administered under any will executed on or after October 1, 1986, in the event that the estate tax computation involves assets described in the preceding sentence, unless specifically stated otherwise, apportion- ment shall be made against such assets and the tax so apportioned shall be recovered from the persons receiving such assets as provided in Sections 2206, 2207 or 2207A of the Internal Revenue Code of 1954 or corresponding provisions of any subsequent tax law. (1985 (Reg. Sess., 1986), c. 878, s. 1; 1987, c. 694, s. 1.)

Furthermore, N.C. Gen. Stat. sec. 28A-27-5 (2001) provides

in part as follows:

> Sec. 28A-27-5. Exemptions, deductions, and credits.
>
> (a) Any interest for which a deduction or exemption is allowed under the federal revenue laws in determining the value of the decedent's net taxable estate, such as property passing to or in trust for a surviving spouse and gifts or bequests for charitable, public, or similar purposes, shall not be included in the computation provided for in G.S. 28A-27-2 to the extent of the allowable deduction or exemption.
>
>         *    *    *    *    *    *    *
>
> (d) To the extent that property passing to or in trust for a surviving spouse or any charitable, public, or similar gift or bequest does not constitute an allowed deduction for purposes of the tax solely by reason of an inheritance tax or other death tax imposed upon and deductible from the property, the property shall not be included in the computation provided for in this Article, and to that extent no apportionment shall be made against the property. * * *

Thus, under the general rule set out in N.C. Gen.

Stat. sec. 28A-27-2(a), a decedent's Federal estate tax

is apportioned pro rata to all persons interested in

the decedent's estate on the basis of the value of each

person's interest in the estate. The statute further

provides that, if the interest is one for which a deduction

or exemption is allowed under the Federal estate tax in

determining the decedent's net taxable estate, such as a

gift or bequest for charitable purposes, then the interest is not to be included in the apportionment computation. N.C. Gen. Stat. sec. 28A-27-5(a). In that event, none of the Federal estate tax is apportioned by the North Carolina statute to the charitable bequest or other deductible interest, and the entire amount of the bequest can be deducted from the gross estate in computing the taxable estate. See, e.g., Estate of Brunetti v. Commissioner, T.C. Memo. 1988-517.

The North Carolina apportionment statute further provides that if a decedent's will specifies a method of apportionment of the estate tax that is different from the method specified by N.C. Gen. Stat. sec. 28A-27-2(a), then the method specified in the decedent's will controls. N.C. Gen. Stat. sec. 28A-27-2(b).

There are several provisions of the Internal Revenue Code in which Congress has given the decedent's estate the right to recover from the person receiving the decedent's property the portion of the estate tax burden attributable to the property. See secs. 2206 (life insurance), 2207 (powers of appointment), 2207A (marital deduction property), and 2207B (reserved life estate). Generally, these Federal recovery provisions deal with property that does not pass through the hands of a personal

representative in administering a decedent's estate.

See Riggs v. Del Drago, 317 U.S. at 102; Estate of

Fagan v. Commissioner, T.C. Memo. 1999-46.  One of these

provisions, section 2207B(a), provides as follows:

> SEC. 2207B.  RIGHT OF RECOVERY WHERE DECEDENT
>             RETAINED INTEREST.
>
> (a) Estate Tax.--
>
>    (1) In general.--If any part of the
> gross estate on which tax has been paid
> consists of the value of property included
> in the gross estate by reason of section
> 2036 (relating to transfers with retained
> life estate), the decedent's estate shall
> be entitled to recover from the person
> receiving the property the amount which
> bears the same ratio to the total tax under
> this chapter which has been paid as--
>
>        (A) the value of such property,
>    bears to
>
>        (B) the taxable estate.
>
>    (2) Decedent may otherwise direct.--
> Paragraph (1) shall not apply with respect
> to any property to the extent that the
> decedent in his will (or a revocable trust)
> specifically indicates an intent to waive
> any right of recovery under this subchapter
> with respect to such property.

The estate's position in this case is that the amount

of the charitable deduction, attributable to the decedent's

bequest of trust property to Millbrook United Methodist

Church, should be computed without apportionment of Federal

estate and State inheritance taxes.  In support of that position the estate makes three arguments.

The estate's first argument is that the decedent intended all of the death taxes attributable to his death to be paid from the trust and not from the residuary probate estate.  The estate bases this argument on the parenthetical language in paragraph 1.02 of article I of the decedent's will (viz, "other than death taxes which are paid from property passing outside of this Will pursuant to the terms of the governing instrument") and on the broad definition of "death taxes" in paragraph 10.02 of article X, quoted above.  The estate further argues that the trust agreement, which forms a part of the decedent's interrelated estate plan, confirms the decedent's intent to pay death taxes from the trust, and the trust controls the apportionment of death taxes.  According to the estate, article V of the trust agreement, particularly paragraph 5.04 thereof, makes it clear that the decedent intended death taxes to be paid from the trust residual assets, after disposition of the general legacy for the charitable beneficiary.

The estate's second argument is that the decedent did not provide a method of apportionment of tax that differs from the method prescribed under the North Carolina

apportionment statute, with the result that the statutory exception, N.C. Gen. Stat. sec. 28A-27-5(a), under which Federal estate tax is not apportioned to charitable bequests, applies to the gift or bequest to Millbrook United Methodist Church. Implicit in the estate's argument is the assumption that the Court must find two things in order to conclude that the decedent opted out of the North Carolina apportionment statute: (a) That the decedent intended all death taxes to be paid from the probate residuary estate, and (b) that the decedent intended to apportion death taxes to all beneficiaries, including the charitable beneficiary. According to the estate, the decedent's will directs that death taxes be paid from the trust, not from the probate residuary estate, and the will does not make specific reference to the "apportionment" of death taxes.

Finally, the estate argues that the language used by a decedent to opt out of the North Carolina apportionment statute must be clear, unequivocal, and unambiguous; and, if there is any ambiguity in the language, then the Court must apply the North Carolina apportionment statute, including the exception for charitable bequests. According to the estate, the language of paragraph 1.02 of the decedent's will and paragraph 6.02B of the trust agreement

create an ambiguity as to whether the death taxes are to be paid out of the probate residuary or the trust residuary, and as to whether decedent intended to apportion taxes. Thus, the estate contends that the North Carolina apportionment statute applies in this case.

Respondent contends that under the decedent's will and trust, death taxes are payable from the decedent's residuary probate estate without apportionment or, to the extent that such assets are not sufficient, from trust property before such property is allocated to the charitable beneficiary. Accordingly, respondent contends that the decedent's death taxes reduce the property available for distribution to the charitable beneficiary and, thus, reduce the amount of the estate's charitable deduction.

According to respondent, paragraph 1.02 of the decedent's will clearly opts out of the North Carolina apportionment statute by providing that death taxes "shall be paid out of * * * [the decedent's] Residuary Estate as an administration expense and shall not be charged against or recovered from any recipient or beneficiary of the property taxed". Implicit in respondent's argument is the assumption that if the decedent's will provides a method of apportionment of the tax that differs from the method

specified by N.C. Gen. Stat. sec. 28A-27-2(a), then the decedent automatically loses the benefit of N.C. Gen. Stat. sec. 28A-27-5(a), the exception which provides that any interest in a decedent's estate for which a deduction or exemption is allowed, such as a charitable bequest, is not taken into account in the apportionment computation. The estate does not take issue with this assumption.

Contrary to the estate's argument, respondent explains that the parenthetical language in paragraph 1.02 of the decedent's will merely serves "to indicate that there is an alternative source of payment of death taxes" and does not mean that all death taxes are to be paid by the trust. Respondent argues that the estate's reading of the will disregards paragraph 1.03, which permits the payment of death taxes out of the trust if the residuary estate is insufficient and if the "Executor shall certify to the Trustee * * * the amount of the insufficiency". Respondent further argues that the estate's reading of the will disregards paragraph 6.02B of the trust agreement, which states that the successor trustee shall pay to the decedent's estate amounts "which are certified by the personal representative of Grantor's estate as being required to pay * * * (iii) any death taxes imposed by reason of Grantor's death".

Respondent points out that the total deductions from the probate estate exceed the gross probate estate by approximately $100,000.  Notwithstanding this shortfall, respondent argues that there is no "insufficiency" of probate assets, within the meaning of paragraph 1.03 of the will, because the executrix is obligated by section 2207B(a) to recover from the trust the estate tax, penalties, and interest attributable to the inclusion in the decedent's gross estate of the interest of the noncharitable beneficiary of the trust.  In this connection, respondent notes that the assets of the trust are includable in the decedent's gross estate under section 2036, a prerequisite for section 2207B(a) to apply. Respondent argues that, under the terms of paragraph 6.02B of the trust agreement, any amount of estate tax recovered from the trust under section 2207B(a) "must be paid before the trust assets are allocated to the charitable foundation as provided under Article V of the Trust."

The dispute between the parties in this case is principally a dispute about the meaning of the will and the trust agreement and, on the basis of those documents, about the intent of the decedent.  Under North Carolina law, "'the intention of the testator is the polar star which is to guide in the interpretation of all wills, and,

when ascertained, effect will be given to it unless it violates some rule of law, or is contrary to public policy.'" Pittman v. Thomas, 299 S.E.2d 207, 211 (N.C. 1983) (quoting Clark v. Connor, 117 S.E.2d 465, 468 (N.C. 1960)); see also In re Wilson's Will, 133 S.E. 2d 189, 191 (N.C. 1963). In determining a testator's intent, the will is to be considered as a whole and in light of the circumstances at the time the will was made. Pittman v. Thomas, supra at 211. The testator's intent is to be gathered from a consideration of the four corners of the will. Harroff v. Harroff, 102 S.E.2d 224, 226 (N.C. 1958); Coppedge v. Coppedge, 66 S.E.2d 777, 778 (N.C. 1951). In addition, effect is to be given to every clause, phrase, and word. Coppedge v. Coppedge, supra at 779; Williams v. Best, 142 S.E. 2, 4 (N.C. 1928); Edens v. Williams, 7 N.C. 27, 29 (1819). Furthermore, we may consider documents other than the will if they are incorporated therein by reference. See Godwin v. Wachovia Bank & Trust Co., 131 S.E.2d 456, 461 (N.C. 1963).

We disagree with the estate's construction of both the decedent's will and the trust agreement. In our view, respondent is correct in asserting that the parenthetical language set forth in paragraph 1.02 of the will, "(other than death taxes which are paid from property passing

outside of this Will pursuant to the terms of the govern-
ing instrument)", simply recognizes that, in certain
circumstances, death taxes can be paid from the trust.
It does not express the decedent's intent that all death
taxes be paid from the trust.

We agree with respondent that under paragraph 1.02 of
the will, the death taxes attributable to the decedent's
death are to be paid from his residuary estate as an
administration expense, but, if the residuary assets are
not sufficient to pay all of the decedent's debts,
expenses, and death taxes, then paragraph 1.03 of the will
provides that the "Executor shall certify to the Trustee
* * * the amount of the insufficiency, which amount shall
be paid out of the property of the trust as provided in
that instrument."  If the decedent had intended that all
death taxes be paid from the trust, as the estate contends,
then there would be no point in requiring the executor to
certify the amount of any "insufficiency" to the trustee of
the trust, as provided by paragraph 1.03 of the will.

We also agree with respondent that the decedent's will
provides that there is to be no apportionment of death
taxes.  Paragraph 1.02 of the will states that the
decedent's death taxes "shall be paid out of my Residuary
Estate as an administration expense and shall not be

charged against or recovered from any recipient or beneficiary of the property taxed".  Thus, not only does the will direct that the decedent's death taxes be paid from his residuary estate, but it also directs that the taxes be paid as an administration expense and that they be borne by the residuary estate without charge or recovery from any recipient or beneficiary.  In our view, this is equivalent to directing that death taxes not be prorated or apportioned.  See Estate of McKay v. Commissioner, T.C. Memo. 1994-362, where the decedent directed that her death taxes be paid out of the residuary of her estate "without adjustment among the residuary beneficiaries, and shall not be charged against or collected from any beneficiary of my probate estate."  See also Branch Banking & Trust Co. v. Staples, 461 S.E.2d 921, 926 (N.C. Ct. App. 1995).

We reject the estate's contention that the decedent must use the word "apportionment" in order to express the concept that there is to be no apportionment of death taxes.  We also reject the estate's contention that the phrase "of the property taxed" in paragraph 1.02 of the will conveys the "decedent's intent to recover the taxes only from those recipients or beneficiaries who receive property subject to tax, i.e., non-charitable bene-ficiaries."  We disagree that this phrase, when read

in context, is a reference to the noncharitable beneficiary, as opposed to any beneficiary. However, even if it is read in that way, the sentence states that death taxes "shall not be charged against or recovered from any recipient or beneficiary of the property taxed". (Emphasis supplied.)

Furthermore, we do not agree with the estate's construction of the trust agreement under which it claims that "all death taxes are to be apportioned to the non-charitable residual beneficiary of the Trust." To the contrary, as we read it the trust agreement, is fully compatible with decedent's will in directing in paragraph 6.02B that death taxes be paid from trust property before the property is allocated between the charitable and noncharitable beneficiaries. The estate's reading of the trust agreement fails to recognize that the trust agreement makes a distinction between the manner in which a distribution to the noncharitable beneficiary is to be computed, paragraph 5.04 of the trust agreement, and the manner in which death taxes are to be paid, paragraph 6.02B of the trust agreement.

Article V of the trust agreement first provides for the payment of the decedent's debts and expenses (paragraph 5.01) and for the distribution of two diamond rings that

were specifically bequeathed to the decedent's sister (paragraph 5.02).  It then directs the successor trustee, in paragraph 5.03, to allocate one-half of the "remaining" trust assets or property to a private charitable foundation for the benefit of the charitable beneficiary.  Paragraph 5.03 directs the charitable foundation to hold the church's share for 5 years before distributing it in fee to the church.  Finally, paragraph 5.04 directs the successor trustee make a distribution of property to the non-charitable beneficiary "upon the death of the Grantor." The trust agreement describes the share of the noncharitable beneficiary which is to be distributed upon the decedent's death as:  "the remaining trust property which remains after providing for all previous distributions and for payment of all expenses of administering such Trust in accordance with provisions of paragraph 6.02 herein for bequests, debts, expenses, and taxes of Grantor's estate".  Thus, in computing the one-half share to be distributed to the noncharitable beneficiary 5 years before the charitable beneficiary is to receive its share, paragraph 5.04 requires that the decedent's bequests, debts, expenses, and death taxes be taken into account.  It appears that the trust agreement

thus safeguards against distributing too much to the noncharitable beneficiary.

A different provision of the trust agreement, paragraph 6.02B, governs the "payment of bequests, debts, expenses and taxes".  In this payment provision, the trust agreement directs that the amounts of bequests, debts, expenses, and death taxes which are certified for payment by the decedent's personal representative "shall be paid first from the Trust property which is subject to allocation under Article V."  Significantly, paragraph 6.02 states that it shall apply "notwithstanding the directions previously given as to the disposition of the Trust after the Grantor's death".

Thus, as we read paragraph 6.02B of the trust agreement, any death taxes which are certified for payment by the decedent's personal representative are to be paid before the trust property is allocated to the two trust beneficiaries and, thus, before the share of the charitable beneficiary is determined.  In effect, any death taxes that are certified for payment by the decedent's personal representative reduce the amount of property to be distributed to the charitable beneficiary.

In summary, we agree with respondent that the decedent's will, in substance, directs that the death taxes

attributable to his death are to be paid from the residuary probate estate without apportionment and, to the extent that the assets of the residuary estate are insufficient, from the trust property.  Thus, the decedent's will provides a method of apportionment that is different from the method prescribed by N.C. Gen. Stat. sec. 28A-27-2(a), under which death taxes are to be apportioned "among all persons interested in the estate".  Accordingly, we agree with respondent that the decedent opted out of the method of apportionment found in chapter 28A, article 27 of the General Statutes of North Carolina, including the exception applicable to charitable bequests in N.C. Gen. Stat. sec. 28A-27-5(a).  See Estate of Fagan v. Commissioner, T.C. Memo. 1999-46; see also Estate of Fine v. Commissioner, 90 T.C. 1068 (1988), affd. without published opinion 885 F.2d 879 (11th Cir. 1989); Estate of Miller v. Commissioner, T.C. Memo. 1998-416, affd. without published opinion 209 F.3d 720 (5th Cir. 2000); Estate of McKay v. Commissioner, T.C. Memo. 1994-362.

The method of apportionment adopted by the decedent in his will controls.  See N.C. Gen. Stat. sec. 28A-27-2(b). Under that method, the death taxes and other bequests, debts, and expenses of the decedent that were paid by the decedent's residuary estate exhausted the residuary estate.

As a result, no probate assets are available for distribution to the trust, and no probate assets are available for allocation to the charitable gift or bequest to the Millbrook United Methodist Church.

In addition, as mentioned above, the total deductions from the probate estate exceed the gross probate assets by approximately $100,000.  This shortfall in the assets of the probate estate must be satisfied from the trust property, either as an "insufficiency" pursuant to paragraph 1.03 of the will, and paragraph 6.02B of the trust agreement, or as a recovery from the trust under section 2207B(a), on the ground that the value of property is included in the gross estate by reason of section 2036. If the shortfall is treated as an insufficiency under paragraph 1.03 of decedent's will, then the trust agreement governs whether death taxes will burden that amount.  On the other hand, if the executrix can recover the shortfall from the trust under section 2207B(a), then the right to such recovery would be another asset of the residuary estate, and no resort to the trust agreement would be necessary.

It is unnecessary for us to decide, in this case, which of the two applies because the result would be the same whichever applies.  As discussed above, the trust

agreement provides in paragraph 6.02B that any death taxes that are certified for payment by the decedent's personal representative "shall be paid first from the Trust property which is subject to allocation under Article V"; that is, before the share of the charitable beneficiary is determined.  Therefore, any death taxes certified under paragraph 1.03 of the will for payment from the trust property are paid under paragraph 6.02B of the trust agreement before the trust property is allocated between the trust beneficiaries and, like the death taxes paid from the decedent's residuary probate estate, reduce the property allocated to the charitable beneficiary and, thus, reduce the amount of the charitable deduction.

Based upon the foregoing,

<u>Decision will be entered under Rule 155</u>.